IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION


FILED
FEB 04 2019
Clerk, U.S Courts
District Of Montana
Missoula Division

| | |
|---|---|
| HIGH COUNTRY PAVING, INC., <br><br> Plaintiff, <br><br> vs. <br><br> UNITED FIRE & CASUALTY CO., <br><br> Defendants. | CV 18–163–M–DLC <br><br> ORDER |

Before the Court is the Motion to Dismiss Count II of Complaint (Doc. 2) filed by Defendant United Fire & Casualty Co. ("United Fire"). United Fire seeks to dismiss Count II of the Complaint filed by Plaintiff High Country Paving, Inc. ("High Country"). (*Id.*) United Fire asserts that Count II, which alleges breach of the implied covenant of good faith and fair dealing, is barred by statute. (Doc. 3 at 4.) The Court construes United Fire's Motion as seeking dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, United Fire's Motion will be denied.

Rule 12(b)(6) motions test the legal sufficiency of a pleading. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Generally, courts may only consider the allegations in the complaint when ruling on a motion

-1-

to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). "All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff." *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 782–83 (9th Cir. 1996). Nonetheless, a court may dismiss a complaint if it lacks a cognizable legal theory. *Id.* at 783. Thus, in order to survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A claim has facial plausibility when a court can draw a "reasonable inference" from the facts alleged that the defendant is liable for the misconduct alleged. *Id.*

## Background

Pursuant to the Complaint, United Fire insured High Country in August 2016, when one of High Country's vehicles was involved in an accident which killed Christine Fogerty and seriously injured her passenger, Mary Elgen. Thereafter, Fogerty's estate and Elgen, represented by the law firm of Edwards Frickle & Culver ("Edwards"), demanded payment of United Fire's combined $3,000,000 policy limits under a $1,000,000 primary commercial auto policy and a

$2,000,000 commercial umbrella policy, without a release of its insured, High Country. United Fire engaged attorney Nick Pagnotta ("Pagnotta") to be High Country's defense counsel for this claim and encouraged High Country to engage independent counsel in the event the case proceeded to trial and there was a verdict in excess of the policy limits.

Edwards' demand letter specified that the damages suffered included $283,991.09 for Elgen's actual medical expenses, $609,486.36 in Fogerty's estimated lost future income had she lived, $595,342.91 in estimated cost of future assisted-living arrangements for Elgen, and $61,060.89 in assisted-living arrangements as of the date of the demand, with the remaining demand being comprised of non-economic damages such as pain and suffering and loss of consortium. The demand letter also indicated an intent to seek punitive damages.

In light of Edwards' demand letter, High Country informed United Fire that the payment of policy limits without a release of liability for High Country was not legally supported. High Country claimed that only undisputed special damages such as Elgen's actual medical expenses needed to be paid prior to negotiating a release of liability for High Country. Pagnotta then responded to Edwards' demand letter, arguing that High Country was entitled to a release in exchange for payment by United Fire of the $3,000,000 limit, because the undisputed damages

did not exhaust the policy limits. Thus, Pagnotta counter-offered to pay the $3,000,000 demand provided High Country obtained a release.

Edwards rejected Pagnotta's counter-offer and renewed the original $3,000,000 demand without a release for High Country, subject to a 10-day response deadline. Edwards then made a separate $2,500,000 demand on High Country. A few days later, High Country received word from United Fire indicating that it was considering accepting Edwards' renewed offer and inviting High Country to consider a contribution of its own.

High Country's independent counsel promptly contacted United Fire to discuss this suggestion and discovered that United Fire intended to accept the $3,000,000 offer. During this conversation, High Country reiterated its position, as previously stated by Pagnotta, that there was no legal basis for United Fire to accept the limits offer without securing a release for High Country because the undisputed special damages were less than 10 percent of the policy limits.[1] Nonetheless, United Fire proceeded to accept the offer for policy limits without a release of High Country.

Alone, High Country sought a separate settlement agreement from Edwards. After some negotiation, High Country contacted United Fire to communicate that

---

[1] The undisputed special damages are Elgen's actual medical expenses of $283,991.09.

High Country's negotiating position had been so compromised as a result of United Fire's settlement with Edwards that High Country was forced to accept an offer to pay $1,275,000 in cash and assign certain legal claims to the claimants in exchange for a release. High Country explained that it planned to pursue recourse against United Fire unless United Fire agreed to pay the $1,275,000 cash component of the settlement or to defend and fully indemnify High Country in litigating the matter. After United Fire refused this offer, High Country performed on the agreement with Edwards.

Thereafter, High Country communicated with United Fire and reiterated the problems caused by United Fire's decision to settle for policy limits without a release, and demanded $1,450,000 in compensation. United Fire responded without analysis of High Country's legal arguments and rejected High Country's demand. (Doc. 1-1 at 3–18.)

## DISCUSSION

Based on the above, High Country alleges claims for unfair claim settlement practices (Count I) and breach of the implied covenant of good faith and fair dealing (Count II). Again, United Fire's Motion focuses solely on Count II. Defining the implied covenant of good faith and fair dealing as requiring "'honesty in fact and the observance of reasonable commercial standards of fair dealing in

-5-

the trade,'" High Country alleges that United Fire deprived it of its reasonable expectations by settling with Edwards without a release for High Country and without "investigat[ing] and faithfully apply[ing] the law in ascertaining and discharging its obligations to its insured." (*Id.* at 21–22 (quoting *Bridger Del Sol, Inc. v. Vincentview LLC*, 406 P.3d 460, 463 (Mont. 2017).) Because this action was removed to federal district court under diversity jurisdiction, (Doc. 1 at 1), we apply the substantive law of Montana, the forum state, in our analysis of whether High Country has stated a claim upon which relief may be granted. *Med. Lab. Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

## I. Montana Unfair Trade Practices Act

United Fire asserts that Montana's Unfair Trade Practices Act ("MUTPA"), codified at Montana Code Annotated § 33–18–101 through § 33–18–1006, "mandates dismissal of Count II." (Doc. 3 at 7.) Montana Code Annotated § 33–18–242(3) provides that:

> An insured who has suffered damages as a result of the handling of an insurance claim may bring an action against the insurer for breach of the insurance contract, for fraud, or pursuant to this section, but not under any other theory or cause of action. An insured may not bring an action for bad faith in connection with the handling of an insurance claim.

(2017). United Fire asserts that this bar on bad faith actions operates to preclude High Country's claim for breach of the implied covenant of good faith and fair dealing.

High Country responds that § 33–18–242(3) operates merely to bar the "common law tort of bad faith" which is not premised on the implied covenant of good faith and fair dealing that is present in every contract. High Country asserts that the implied covenant provides the basis for an action for breach of contract that is specifically allowed by § 33–18–242(3). Accordingly, High Country asserts that the MUTPA only bars bad faith claims sounding in tort, not contract. Therefore, because High Country's claim sounds in contract and not in tort, High Country argues that United Fire's Motion must be denied. (Doc. 5 at 2–9.) The Court agrees.

In *Story v. City of Bozeman*, 791 P.2d 767, 775 (Mont. 1990) *overruled on other grounds by Arrowhead School District No. 75 v. Klyap*, 79 P.3d 250 (Mont. 2003), the Montana Supreme Court set out to "reassess the covenant of good faith and fair dealing and to provide more workable guidelines for the future." In so doing, the Court distinguished the "bad faith tort," with its inherently indefinite damages, from an action for breach of the implied covenant of good faith and fair dealing. Because damages arising out of "the separate tort of bad faith" are

-7-

"excessive" in contract cases, the Court held that the "Uniform Commercial Code model should be extended to cover all contracts and that the bad faith tort should be used only when the parties have a special relationship." *Id.* To this end, the Montana Supreme Court held that "every contract, regardless of type, contains an implied covenant of good faith and fair dealing. A breach of the covenant is a breach of the contract." *Id.*

The Montana Supreme Court then proceeded to define this cause of action. The Court established that the standard of compliance would be that provided by Montana Code Annotated § 28–1–211: "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." The Court expanded on this definition, providing that:

> This is the same standard as applied to merchants under the Uniform Commercial Code. Each party to a contract has a justified expectation that the other will act in a reasonable manner in its performance or efficient breach. When one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, the contract is breached.

*Id.* Owing to the fact that a breach of the covenant "in the great majority of ordinary contracts" is actionable only as a breach of contract claim, "only contract damages are due" in such cases. *Id.* Statutorily, these damages are definite:

> For breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by this code, is

> the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary course of things would be likely to result therefrom. Damages which are not clearly ascertainable in both their nature and origin cannot be recovered for a breach of contract.

Mont. Code Ann. § 27–1–311 (2017). In "common contract actions," then, the Court removed the "specter" of "indefinite tort damages," by limiting the parties' recourse for breach of the implied covenant of good faith and fair dealing to a claim for breach of contract. *Story*, 791 P.2d at 774–76.

Notwithstanding the above, the Montana Supreme Court clarified that the "tort of bad faith may still apply in exceptional circumstances." *Id.* at 776. While this Court need not delve into the situations when the tort of bad faith remains a viable legal theory, it is worth noting that the Montana Supreme Court cited the MUTPA as an example of an instance where the Montana Legislature "codified the tort's most common applications." *Id.* This Court finds this distinction important because it indicates the Montana Supreme Court's perception of the MUTPA as an embodiment of a limited instance where the tort of bad faith is codified in relation to an arms-length contractual relationship. While the MUTPA expressly prohibits bad faith claims, this is because the MUTPA itself codified the "common applications" of the tort which remain viable for an insured.² Indeed, "tort-type

---

² The MUTPA allows claims by an insured against an insurer if the insurer:

> (1) misrepresent[s] pertinent facts or insurance policy provisions relating to coverage at issue;

-9-

remedies are available to the extent allowed under the [MUTPA], but not as a separate cause of action." *Burton v. State Farm Mutual Auto. Ins. Co.*, 30 M.F.R. 173, 183 n. 7 (D. Mont. 2002). In light of the above, this Court is satisfied that the MUTPA allows insureds to sue for breach of contract and that this sanction includes claims for breach of the implied covenant.

This Court's holding in this matter is consistent with its decision in *Oltz v. Safeco Insurance Company of America*, 306 F. Supp. 3d 1243, 1258 (D. Mont. 2018). In *Oltz*, the insured sued Safeco for breach of the covenant of good faith and fair dealing, and Safeco asserted as a defense that the insured's claims were barred by the MUTPA. Relying on the Montana Supreme Court's statement in *Story* that "every contract, regardless of type, contains an implied covenant of good

---

> . . .
> (4) refuse[s] to pay claims without conducting a reasonable investigation based upon all available information;
> (5) fail[s] to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
> (6) neglect[s] to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;
> . . .
> (9) attempt[s] to settle claims on the basis of an application that was altered without notice to or knowledge or consent of the insured;
> . . .
> (13) fail[s] to promptly settle claims, if liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

Mont. Code Ann. § 33–18–201; *see also* § 33–18–242(1) (making only subsections 1, 4, 5, 6, 9, and 13 of § 33–18–201 actionable).

faith and fair dealing" and that a "breach of the covenant is a breach of the contract," this Court held that despite the bar against bad faith claims provided in § 33–18–242(3) of the MUTPA, the insured could properly bring a contract claim for breach of the implied covenant of good faith and fair dealing against Safeco. *Oltz*, 306 F. Supp. 3d at 1258. Further, this Court applied the standard of compliance provided in Montana Code Annotated § 28–1–211, when analyzing whether the Safeco had breached that covenant.

United Fire attempts to distinguish *Oltz* on the basis that this Court's decision in that case did not discuss the "key language" from *Story* limiting its holding that the standard provided in § 28–1–211 applies only to those contracts "not covered by a more specific statutory provision." (Doc. 7 at 4–5.) United Fire contends that the standard provided in *Story* and § 28–1–211 applies to other contracts but does not apply to a claim for breach of an insurance contract because there is a "more specific statutory provision"—the MUTPA. (Doc. 7 at 2–3.)

However, this argument does not convince the Court that contracts between insureds and insurers do not contain the implied covenant of good faith and fair dealing. Again, the Montana Supreme Court stated that "every contract, regardless of type, contains an implied covenant of good faith and fair dealing" and that a "breach of the covenant is a breach of the contract." *Story*, 791 P.2d at 775. The

language emphasized by United Fire does not limit the Montana Supreme Court's finding that every contract contains the covenant but, instead, limits the standard of compliance for the covenant to that provided by § 28–1–211, unless another standard is provided by "a more specific statutory provision." Inherent in this Court's analysis in *Oltz* is the finding that the MUTPA does not itself establish a more specific standard of compliance for the covenant of good faith and fair dealings in the insurance context. *See Oltz*, 306 F. Supp. 3d at 1258 (finding the standard to be "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade") (internal quotation marks and citation omitted).

The MUTPA was "crafted by the Legislature to address the unfair treatment of insureds by their insurance companies in the handling of insurance claims." *Thomas v. Northwestern Nat. Ins. Co.*, 973 P.2d 804, 809 (Mont. 1998) (internal quotation marks omitted). Certainly, then, the MUTPA establishes what unfair trade practices look like. Nevertheless, it does not establish a different or more specific standard of compliance for the implied covenant of good faith and fair dealing than the one which applies to every contract, "regardless of type." *Story*, 791 P.2d at 775.

United Fire next argues that the Montana Supreme Court's opinion in *Stephens v. Safeco Insurance Co. of America*, 852 P.2d 565, 567–68 (Mont. 1993), established that an insured cannot sue an insurer for breach of the implied covenant of good faith and fair dealing. (Doc. 7 at 3.) The Court in *Stephens* noted that the cause of action in that case arose "prior to the adoption of [the MUTPA], and therefore the applicability of said section is not an issue in this case on appeal." 852 P.2d at 567. Because the MUTPA did not apply, "the insured was entitled to bring common law claims, including a bad faith claim, against the insurer." *Thomas v. Northwestern Nat. Ins. Co.*, 973 P.2d 804, 810 (Mont. 1998). Applying the common law, the Court in *Stephens* stated:

> "Insurance companies have a duty to act in good faith with their insureds, and this duty exists independent of the insurance contract and independent of statute." *Lipinski v. Title Ins. Co.*[, 655 P.2d 970, 977 (Mont. 1983)]. If this duty is breached the cause of action of the insured against the insurer sounds in tort. *First Sec. Bank of Bozeman v. Goddard*[, 593 P.2d 1040, 1047 (Mont. 1979)].
>
> However, if the situation is reversed, and the insured breaches the covenant of good faith and fair dealing, the result is not a tort, but a breach of contract. In *Story* [ ], this Court made clear "that the bad faith tort should be used only when the parties have a special relationship."

852 P.2d at 567–68.

Despite the Court's reliance on *Story* for the elements establishing a special relationship, the Montana Supreme Court's recitation of the common law

-13-

surrounding the tort of bad faith in *Stephens* failed to acknowledge that *Story* established a cause of action for breach of the implied covenant of good faith and fair dealing in all contracts. However, that is because the Court in *Stephens* was grappling with whether or not an insured was entitled to an award of damages when both the insured and insurer had violated a "duty of good faith and fair dealing." 852 P.2d at 567. In the process, the Court was concerned not with the type of claims available to the insured, but with the damages owed to the insured and to the insurer upon a reciprocal breach. The Court ultimately awarded damages to the insured because of the parties' "varying positions, the [insurer's] conduct rises to the level of a tort while the [insured's] conduct is a breach of contract." *Id.* at 568. Indeed, the common law tort of bad faith in the insurance context was only available to the insured and not to the insurer because "there is no fear that the insured will harm the insurer to [the same] extent" when the insurer is in the superior position. *Stephens*, 852 P.2d at 568. As established in *Story*, a claim for the breach of the implied covenant of good faith and fair dealing is a breach of contract, and a breach of the "duty of good faith and fair dealing" is a tort claim. 791 P.2d at 775–76. In this light, *Stephens* merely stands for the proposition that an insurer cannot sue an insured for common law bad faith (and neither can an insured, for that matter, after the enactment of the MUTPA), not that

-14-

an insured cannot sue an insurer for breach of contract under the implied covenant of good faith and fair dealing. While there existed in the common law a duty of the insurer "to act in good faith . . . independent of the insurance contract and independent of statute," this does not mean that there is not also a duty existing in contract, particularly in the wake of *Story*.

## II. Implied Covenant

In United Fire's reply brief, United Fire argues for the first time that the implied covenant of good faith and fair dealing could not require United Fire to demand a release before settling with Edwards. United Fire states that the "nature and extent of the implied covenant is measured by the reasonable expectations of the parties to the contract." (Doc. 7 at 7.) United Fire then asserts that "there is no contractual obligation in liability policies to obtain a release, and even if there were, such a provision would be against public policy." (*Id.*) Accordingly, United Fire asserts that High Country could not reasonably expect United Fire to obtain a release and there could not "be an implied covenant that required a release of claims where liability is reasonably clear and damages exceed policy limits." (*Id.* at 9.)

United Fire's argument overlooks two things. First, the Montana Supreme Court in *Story* explicitly stated that "breach of an express contract term is not a

prerequisite to breach of the implied covenant." 791 P.2d at 775. Consequently, it is irrelevant that the contract itself did not explicitly require United Fire to negotiate a release or that such a provision would be against public policy. Certainly, there are situations where requiring an insurer to demand a release of liability for the insured before paying on the policy when liability clearly exceeds policy limits would be against public policy. In *Watters v. Guaranty Nat. Ins. Co.*, 3 P.3d 626, 638 (Mont. 2000), the Montana Supreme Court held as much, stating:

> [W]here an insured's liability for damages caused to a third party in an auto accident is reasonably clear, and those damages undisputedly exceed the mandatory limits . . . , it is an unfair trade practice *per se* under § 33–18–201, MCA, for an insurer to condition the payment of the owed mandatory minimum policy limits on the third party's agreement to provide a full and final release of all liability in favor of an insured.

Nonetheless, this does not mean that *any* obligation to seek a release of liability for an insured defies public policy or that an insured cannot have a reasonable expectation for negotiation of a release when policy limits are *not* clearly implicated.

This brings us to the second facet overlooked by United Fire: it was not clear that liability exceeded policy limits in this case when United Fire paid policy limits without negotiating a release. In *Ridley v. Guaranty National Insurance Co.*, 951 P.2d 987, 994 (Mont. 1997), the Montana Supreme Court established that an

-16-

insurer cannot leverage payment of one type of damages "for which liability has become reasonably clear in order to influence settlement of claims for other types of damages made pursuant to the same policy." High Country asserts that it had a reasonable expectation in this case that United Fire would pay the damages owed under *Ridley*, which High Country claims were far below policy limits, before proceeding to negotiations over the remaining damages and a release of liability for High Country.

High Country argues that the damages presented by Edwards in his demand contained only $283,991.09 in *Ridley* damages, with the rest of the $3,000,000 demand comprised of "non-economic emotional distress damages, loss of consortium, future estimated economic damages, and punitive damages." (Doc. 11 at 5–6.) High Country claims that because the *Ridley* damages made up less than ten percent of policy limits, United Fire should have paid those damages outright but "should have insisted upon a release if the claimants wanted to settle the disputed part of the claim in exchange for the remaining $2.72 million under High Country's policy." (*Id.* at 6.) By failing to do so, and paying policy limits outright without a release, High Country claims that United Fire "dramatically reduced the claimants' litigation risk profile and effectively bankrolled their case against High Country." (Doc. 1-1 at 14.)

Between *Watters* and *Ridley*, there appears to be an area of the law which could be navigated to justify a reasonable expectation that United Fire would attempt to negotiate a release for High Country before settling with the claimants in this case. Again, in deciding this Motion to Dismiss, the Court is constrained to the facts alleged in the Complaint, which are to be construed in the light most favorable to High Country. *SmileCare Dental Group*, 88 F.3d at 782–83. Those facts show that the only *Ridley* damages contained in the demand letter amounted to less than ten percent of the policy limits and that United Fire nonetheless paid policy limits without a release of liability for High Country. Neither *Watters* nor *Ridley* would be violated if United Fire had negotiated for a release after paying the undisputed damages in this case. This Court finds that these facts could support a breach of contract claim for the failure of United Fire to observe reasonable commercial standards of fair dealing in the trade. Consequently,

IT IS ORDERED that United Fire's Motion to Dismiss (Doc. 2) is DENIED.

DATED this 4th day of February, 2019.

Dana L. Christensen, Chief Judge
United States District Court