Robert K. Baldwin
Trent M. Gardner
Jeffrey J. Tierney
**GOETZ, BALDWIN & GEDDES, P.C.**
35 North Grand
P.O. Box 6580
Bozeman, MT  59771-6580
Ph:     (406) 587-0618
Fax:    (406) 587-5144
email:  rbaldwin@goetzlawfirm.com
        tgardner@goetzlawfirm.com
        jtierney@goetzlawfirm.com

Attorneys for High Country Paving, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA, MISSOULA DIVISION

| | |
|---|---|
| HIGH COUNTRY PAVING, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED FIRE & CASUALTY CO., <br><br> Defendant. | Cause No. 9:18-cv-00163-DWM <br> Hon. Donald W. Molloy <br><br> **PLAINTIFF'S BRIEF <br> ON QUESTION OF <br> CERTIFICATION** |

Plaintiff High Country Paving, Inc. files this brief pursuant to this Court's

Order dated April 3, 2019 (Doc. 22).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................3

INDEX OF EXHIBITS ......................................................................6

I. INTRODUCTION ......................................................................1

    A. United Fire's duties..........................................................1

    B. What High Country does and does not contend...................9

    **C. The attorneys United Fire has hired recognize the conflict between these duties and that neither one always trumps the other**........................................................... 13

II. PLAINTIFF'S PROPOSED CERTIFIED QUESTION(S) AND RATIONALE........................................................... 17

III. PLAINTIFF'S OBJECTIONS TO DEFENDANT'S PROPOSED CERTIFIED QUESTION........................................... 19

    A. It focuses upon the duty to the third-party claimant, and ignores the duty to the insured ...................................20

    B. It ignores the relevant facts of this dispute .......................20

    C. United Fire incorrectly assumes that the resulting "damages exceed the limits of the insured's liability policy...." ........................23

IV. ADDITIONAL FACTS PLAINTIFF BELIEVES ARE NECESSARY .....25

CONCLUSION ..................................................................32

CERTIFICATE OF COMPLIANCE.................................................34

# TABLE OF AUTHORITIES

**Page No.**

## CASES:

*Dean v. Austin Mut. Ins. Co.*,
  263 Mont. 386, 869 P.2d 256 (1994) ............................................................. 21

*DuBray v. Farmers Ins. Exch.*,
  2001 MT 251, 307 Mont. 134, 36 P.3d 897 ........................................ 8, 13, 16

*Estate of Gleason v. Central Life Ins. Co.*,
  2015 MT 140, 379 Mont. 219, 350 P.3d 349.......................................... 22

*Fowler v. State Farm Mut. Auto. Ins. Co.*,
  153 Mont. 75, 454 P.2d 76 (1969) ....................................................... 7

*Gibson v. Western Fire Ins. Co.*,
  210 Mont. 267, 682 P.2d 725 (1984) .................................................... 7

*Hop v. Safeco Ins. Co. of Ill.*,
  2011 MT 215, ¶ 17, 361 Mont. 510, 261 P.3d 981 ................................ 8, 9, 13

*Jessen v. O'Daniel*,
  210 F. Supp. 317 (D. Mont. 1962) ....................................................... 7

*Johnson v. U.S.*,
  510 F. Supp. 1039(D. Mont. 1981),
  *rev'd in part on other grounds*, 704 F.2d 1431 (9th Cir. 1983) ...................... 24

*Kelly v. John R. Daily Company*,
  56 Mont. 63, 181 P. 326 (Mont. 1919) ................................................. 24

*Kephart v. Nat. Union Fire Ins. Co. of Pittsburgh*,
    No. CV-06-97-BLG-CSO, 2008 WL 11347415
    (D. Mont. Feb. 5, 2008) ........................................................ 21, 22

*Lorang v. Fortis Ins. Co.*,
    2008 MT 252, 345 Mont. 12, 192 P.33d 186 .................................22

*Montana Petroleum Tank Release Compensation Board v. Crumley's, Inc.*,
    2008 MT 2, 341 Mont. 33, 174 P.3d 948 ...................................... 31

*Obserson v. U.S.*,
    311 F. Supp. 2d 917 (D. Mont. 2004) ..........................................24

*Palmer by Diacon v. Farmers Ins. Exchange*,
    261 Mont. 91, 861 P.2d 895 (1993) .............................................. 21

*Pfau v. Stokke*,
    110 Mont. 471, 103 P.2d 672 (Mont. 1940) .................................24

*Ridley v. Guaranty Nat. Ins. Co.*,
    286 Mont. 325, 951 P.2d 987 (Mont. 1997) ..........................passim

*Redies v. ALPS*,
    2007 MT 9, 335 Mont. 223, 150 P.3d 930 ............................... 21, 22

*Safeco Ins. Co. v. Ellinghouse*,
    223 Mont. 239, 725 P.2d 217 (Mont. 1986) ...................................7

*Shilhanek v. D-2 Trucking, Inc.*,
    2003 MT 122A, 79 P.3d 1094 ........................................... 13, 17, 22

*Teeter v. Mid-Century Ins. Co.*,
    2017 MT 292, 389 Mont. 407, 406 P.3d 464 ..................................9

*Watters v. Guaranty Nat. Ins. Co.*,
    2000 MT 150, 300 Mont. 91, 3 P.3d 626 .......................................9, 11, 14, 16

*Were v. David*,
    275 Mont. 376, 913 P.3d 625 (1996) ............................................................24

*West for Lee v. USAA*,
    2016 MT 285, 385 Mont. 292, 384 P.3d 58............................................ 21, 22

## STATUTES:

M.C.A. § 33-15-337(2) ....................................................................... 31

M.C.A. § 33-18-201.............................................................................9

M.C.A. § 33-18-201(6) .......................................................................8

M.C.A. § 33-18-242(5) ......................................................................20

# INDEX OF EXHIBITS

| Exhibit No. | Date | Description |
|---|---|---|
| 1 | 11/30/17 | Email, Katherine Huso to Anne Belich and Neal Scharmer |
| 2 | | Amicus Brief filed in *Peterson v. St. Paul Fire & Marine Insurance Company*, DA 09-0500 |
| 3 | 1/15/10 | Appellee/Cross-Appellant Opening Brief, *Peterson v. St. Paul Fire & Marine Insurance Company*, DA 09-0500, Supreme Court of the State of Montana (excerpts) |
| 4 | 11/14/17 | Pagnotta Letter to Edwards |

# I. INTRODUCTION.

High Country agrees that this Court should ask the Montana Supreme Court for guidance. But this Court must certify the right question to receive a meaningful and helpful answer.

This dispute lies at the confluence of two sometimes–conflicting duties:

- United Fire's duty to High Country as its insured; and

- United Fire's duty to the third-party claimants.

## A. United Fire's duties.

United Fire owes a duty to its insured that includes a duty to "give the insured's interest as much consideration as it gives its own." *Gibson v. Western Fire Ins. Co.,* 210 Mont. 267, 275, 682 P.2d 725, 730 (1984); *Fowler v. State Farm Mut. Auto. Ins. Co.*, 153 Mont. 75, 79, 454 P.2d 76, 79–80 (1969) (insurers must fairly consider the risk of exposing their insured to excess liability in evaluating a potential settlement); *Safeco Ins. Co. v. Ellinghouse*, 223 Mont. 239, 252–53, 725 P.2d 217, 226 (Mont. 1986) (insurers owe their insured a duty to exercise "honest and conscientious fidelity to the common interests of the parties." (quoting *Jessen v. O'Daniel*, 210 F. Supp. 317, 331 (D. Mont. 1962))). And the insurance company

owes a duty to its insured, when liability is reasonably clear, to attempt in good faith to effectuate a prompt fair and equitable settlement.  *See* M.C.A. § 33-18-201(6).[1]

At the same time, the insurance company owes duties to third-party claimants. Those include the same statutory duty to attempt in good faith to effectuate a prompt fair and equitable settlement. And from that statutory duty flows an obligation to pay certain amounts when liability has become reasonably clear, including amounts such as past medical bills, past lost earnings and other amounts about which there can be no objective disputes. *See generally Ridley v. Guaranty Nat. Ins. Co.*, 286 Mont. 325, 337–38, 951 P.2d 987, 994 (Mont. 1997); *DuBray v. Farmers Ins. Exch.*, 2001 MT 251, 307 Mont. 134, 36 P.3d 897 (this duty applies to damages that are "not reasonably in dispute" but does not extend to "claims for pain and discomfort, mental distress, inconvenience, and punitive damages."); *Hop v. Safeco Ins. Co. of Ill.*, 2011 MT 215, ¶ 17, 361 Mont. 510, 261 P.3d 981 (*Ridley* and its progeny ensure prompt payment of "indisputable out-of-pocket item[s] of damages" that may "destroy a person's credit" or cause undue

---

[1] Nothing in that statutory section or Montana jurisprudence suggests that such duty runs only to third-party claimants, such that the insured can act in bad faith with respect to its own insured or can effectuate a settlement that is unfair and inequitable as to its own insured.

financial stress if they are withheld pending full and final settlement of the remaining claims and damages that are still subject to reasonable dispute). Some cases speak in terms of liability being clear or undisputed and then, separately, the undisputed nature of the damages. Thus, for instance, *Watters v. Guaranty Nat. Ins. Co.*, 2000 MT 150, 300 Mont. 91, 3 P.3d 626 spoke of the insured's "liability for damages…" being "reasonably clear" ***and*** then addressed that the damages "undisputedly exceed the mandatory limits…." *Id.* Others conflate the two concepts with an analysis that subsumes both certainty as to liability and certainty as to the damages; and later cases have said so expressly. *See Hop*, ¶ 17 (*Ridley* contemplated damages like medical bills and lost wages that are "plainly ascertainable"); *Teeter v. Mid-Century Ins. Co.*, 2017 MT 292, 389 Mont. 407, 406 P.3d 464 (even where liability is certain, causation/damages may be subject to reasonable dispute). If either element—liability or the amount of resulting damages—is uncertain, then it cannot be said that liability for damages in excess of any particular amount is certain.

## B. What High Country does and does not contend.

High Country contends that United Fire breached its contract (the duty to defend its insured and the implied covenant of good faith and fair dealing) and its obligations under M.C.A. § 33-18-201 by the manner in which it paid out policy

limits without obtaining a release for High Country. High Country believes it did so by: overriding the advice of its own attorneys; withholding the relevant policy provisions from High Country; not providing High Country a meaningful opportunity to participate in a unified settlement effort before destroying High Country's legitimate leverage; paying policy limits even though claimed (let alone undisputed) special damages[2] were far below limits; and paying policy limits without a release in disregard of High Country's interests.

High Country does not contend that it is *always* a breach of the insurer's duties to pay policy limits without a release of the insured just because undisputed special damages do not exceed policy limits. That may or may not be permissible in some cases, although it is an academic question—this case requires a determination of whether it was a violation under the particular facts and circumstances of *this case*.

---

[2] United Fire was paying all *Ridley* damages as they were claimed and these payments totaled only approximately $130,000. At best, *Ridley* damages totaled $283,991.09. The Edwards Firm was only able to get total claimed special damages to approximately $1.5 million (half of policy limits) by including speculative and questionable items such as many years of assisted living expenses for the surviving victim **and** her spouse.

Thus, High Country does not contend that either one of these duties always overpowers and trumps the other. There may be times when, under the particular facts, the duty to the third-party claimant requires payment of policy limits without a release. *See, e.g., Watters, supra.*

At other times, however, it may be that the duty to the insured requires that the insurer ***not*** pay policy limits without a release. When the *Watters* Court was asked to decide whether conditioning payment of policy limits on a release was bad faith toward a third-party claimant, the Court also offered guidance about whether that same course of action might breach the insurer's duties to its insured. The Court held that it was not *per se* actionable to fail to secure a release, but the insurer still "must consider the interests of its insured." *Watters*, ¶ 57. The Court concluded: "This ruling is by no means intended to foreclose any or all bad faith claims—including those related to the duty to defend—that an insured may bring against its insurer for conduct prior to or following the handling of an insurance claim." The Court thus left open the possibility that an insurer may breach its duty to its insured by paying policy limits without a release in circumstances outside the facts presented in *Watters*, i.e. in cases like this where undisputed special damages are less than available coverage. *Id.*, ¶ 62

While the Montana Supreme Court has not directly addressed this particular

question, United Fire's coverage counsel correctly observed that its opinions have never suggested that an insurer would be in breach of its duty to a third-party claimant by requiring a release of the insured before paying policy limits where the undisputed special damages do not meet or exceed policy limits. *See infra.*

High Country believes that the correct result requires an insurer (and this Court, the Montana Supreme Court, and these parties) to consider both duties, and not just one of the duties to the exclusion of the other. Thus, a certified question that focuses only on the duty of the insurance company to the third-party (as does United Fire's proposed certified question) misses the mark by ignoring a significant part of the analysis, *i.e.*, the insurer's duties to its insured. Likewise, if High Country were to propose a question that pretended United Fire owed no duty to the third-party claimants, that would also be too narrow, and wrong.

Any certified question that does not ask the Montana Supreme Court to balance those two duties – whether it errs by emphasizing the duty to the insured or the duty to the third-party claimant – will not properly frame the issues and thus will not, even if answered, yield meaningful guidance.

**C.** **The attorneys United Fire has hired recognize the conflict between these duties and that neither one always trumps the other.**

As explained above, the issue is not black and white. Insurers owe duties to their insureds that the insurer's duties to third parties do not trump. United Fire's own coverage counsel, Katherine Huso, explained this to United Fire:

> I disagree with Mr. Edwards' interpretation of *Ridley/DuBray* and the other Montana cases cited in his 11/27 demand. **No Montana court has ever required an insurer to advance pay general damages without a full and final release of its insured.** The duty to advance pay prior to final settlement has been limited to those cases in which the insured's liability is reasonably clear and the third-party claimant's special damages are not reasonably in dispute. In *Hop v. Safeco*, which was decided in 2011, the Montana Supreme Court held that a third-party claimant was not entitled to file a DJ action against the tortfeasor's insurer seeking advance payment of the residual diminished value (RDV) of his vehicle, prior to final resolution of the underlying claim. Unlike medical expenses and wage loss, **such damages are "wholly subjective in nature and not plainly ascertainable in amount."** …
>
> **There is no authority supporting his assertion that UFG owes a greater duty to a third-party claimant than its own insured, or that the failure to pay limits without a release under these circumstances exposes UFG to significant bad faith/UTPA liability.** Both of the decisions cited in his letter in support of this assertion (*Watters* and *Shilhanek*) involved an insurer's failure to advance pay a third-party claimant's **medical expenses** (bold in original) that exceeded the policy limits.

Email, Katherine Huso to Anne Belich and Neal Scharmer, November 29, 2017 (Exhibit 1, hereto).

Likewise, in an Amicus Brief filed in *Peterson v. St. Paul Fire & Marine Insurance Company*, DA 09-0500, Supreme Court of the State of Montana, United Fire's counsel in this matter recognized the dichotomy and argued against any bright-line rule that an insurer must pay policy limits without a release when liability (including for damages in excess of policy limits) is in dispute:

> These high standards provide the proper balance between an insured's contractual right to be protected from personal liability and improperly delaying payment of money admittedly owed to an injured person. Where the undisputed facts show liability in excess of policy limits is reasonably clear, an insured cannot have a reasonable expectation that payments will be withheld from an innocent third party. *Watters v. Guaranty National Ins. Co.*, 2000 MT 150, ¶ 57. However, **where material issues of fact exist, the insurer's fiduciary duty to protect its insured must prevail over the duty to pay third parties. This is particularly true where coverage has been purchased in excess of the statutory minimum limits.**
>
> **Where there is a legitimate basis for contesting a claim, the insured must be given the full protection of the coverage purchased, including a zealous defense of reasonably contested claims with policy limits intact.** . . . Mr. Lindberg was entitled to his day in court where those issues would be litigated at St. Paul's expense **with the full protection of his policy in place, regardless of Mr. Allums' best guesses of how that day in court would come out.**

*Id.*, 2010 WL 371372, **13-14 (emphasis added) (Exhibit 2, hereto).

In that same case, Guy Rogers (one of the attorneys United Fire allegedly relied on to pay policy limits without a release in this case) also argued strenuously against a rule requiring payment of policy limits when factual issues exist. Mr. Rogers pointed out that such a policy would put "ordinary every-day Jane and John Doe defendants at considerable financial risk and potentially violate their constitutional right to have their legitimate disputes determined by a jury" and explained:

> If this Court changes the law in Montana and requires an insurer to settle a contested liability claim based merely upon the subjective analysis as to how the claim might ultimately be decided, instead of whether or not the liability facts are legitimately in dispute, the **insured defendant will face the daunting prospect of his insurer settling an otherwise defensible claim, in order to avoid bad faith litigation**. Such a practice would leave the average Jane Doe defendant exposed to liability and defense costs which may have been avoidable if the claim were aggressively litigated and eventually compromised or successfully defended through trial. As a practical matter, post *Shilhanek*, insureds want and need their insurance companies to fight contested liability claims because they face personal exposure after the insurer pays it required limits.[3]

---

[3] While *Peterson* dealt with disputed liability for any damages, as explained above, the same reasoning applies to disputed liability for damages in excess of policy limits.

Appellee/Cross-Appellant Opening Brief, *Peterson v. St. Paul Fire & Marine Insurance Company*, DA 09-0500, Supreme Court of the State of Montana, pp. 23-24 (emphasis added) (Exhibit 3, hereto.)

And, UFC's appointed defense counsel, Mr. Nick Pagnotta, wrote to Edwards on November 14, 2017, rejecting the demand to pay policy limits without a release of High Country. Mr. Pagnotta correctly refuted the position that policy limits must be paid without a release, noting:

- UFC was already paying *Ridley* damages and would continue to do so;

- "this does not appear to be a case where policy limits should be tendered without a release of our client.";

- Under *Watters v. Guar. Nat'l Ins. Co.*, 2000 MT 150, 300 Mont. 91, 3 P.3d 626, *Ridley* damages can sometimes exhaust policy limits, in which case they must be paid without a release;

- But, under *Dubray v. Farmers Ins. Exch.*, 2001 MT 251, 307 Mont. 134, 36 P.3d 897, "[g]eneral damages and alleged punitive damages are usually not included in the category of damages required to be advance paid.";

- "The circumstances for which limits should be advanced are where undisputed outstanding special damages expenses are at or above

limits." Citing *Shilhanek*; and

- "Here, United Fire has shown its willingness to pay outstanding expenses which have been submitted pursuant to *Ridley*. Given the applicable limits, however, it does not appear that outstanding special damages expenses exceed limits. Also, some of the claimed special damages and legal theories presented in your letter may be debatable."

*See* Pagnotta Letter to Edwards, November 14, 2017 (Exhibit 4, hereto).

Clearly, the issue requires consideration of the two competing duties, and is not to be analyzed only in terms of the duty owing to third-party claimants.

## II. PLAINTIFF'S PROPOSED CERTIFIED QUESTION(S) AND RATIONALE.

High Country has proposed two different questions to United Fire, both of which the insurer rejected. The two proposed questions are:

> Can it be a breach of an insurer's duty to its insured under the UTPA to pay policy limits to a third party in a motor vehicle accident without a release of its insured where total claimed special damages are below policy limits but total damages (including general damages) might exceed policy limits?

Or:

> In an automobile accident case where the third-party claimants' claimed special damages are below liability policy limits, is the possibility that general damages may take the verdict to an amount in excess of policy limits an

absolute defense to its insured's claim of violation of the Unfair Trade Practices Act for paying policy limits to the claimants without obtaining a release of its insured?

Of these two statements of the question, High Country marginally prefers the first, although it will certainly live with either. High Country believes either formulation is preferable to United Fire's question for the following reasons:

- Both questions allow for consideration of the duties owing to ***both*** the insured and the third-party claimants. They appropriately phrase the question in a way that allows the Montana Supreme Court to weigh both duties.

- Neither question asks the Court for a bright-line pronouncement. United Fire's formulation of the question, *infra*, asks for a categorical answer that an insurer has a duty to pay policy limits without a release. It allows for no subtlety or any fact-dependent analysis of what is reasonable in the circumstances. High Country's formulations of the question, to the contrary, do allow the Montana Supreme Court to consider that the specific facts at issue might influence the answer.

  o Thus, the first question allows the Montana Supreme Court to respond that, even where the insurer thinks general damages might take the verdict beyond policy limits, the specific facts of that case

might make it unreasonable for that carrier to pay policy limits without obtaining a release for its insured.

- o Similarly, the second formulation of the question is phrased in the converse, but also allows the Montana Supreme Court to respond that the insurer's belief that general damages might exceed policy limits is not necessarily an absolute defense to claims for violation of the UTPA.

- Both formulations of the question acknowledge a significant aspect of this case that United Fire's formulation ignores, i.e., that even the claimed special damages—a far broader category than *Ridley* damages—do not meet or exceed policy limits.

- Both formulations recognize that, unlike *Ridley* damages, general damages are an inherently subjective factual issue for the jury to determine. Thus, unlike United Fire's proposed question, which assumes that general damages must exceed $1.5 million, High Country's questions allow for that as a possibility, or the carrier's belief.

## III. PLAINTIFF'S OBJECTIONS TO DEFENDANT'S PROPOSED CERTIFIED QUESTION.

According to the last correspondence on this topic exchanged between the parties since the preliminary pretrial conference, Defendant United Fire would

certify the following question to the Montana Supreme Court:

> If an insured's liability for damages caused to a third party in a motor vehicle accident is reasonably clear, and those damages exceed the limits of the insured's liability policy, does the insurer have a duty under the Unfair Trade Practices Act to pay available policy limits without requiring a full and final release of all liability in favor of its insured?[4]

High Country objects to this formulation of the question for the reasons which follow.

### A. It focuses upon the duty to the third-party claimant, and ignores the duty to the insured.

As discussed above, analysis of the current case requires, not a myopic focus on one duty or the other, but upon the vortex that results when the two duties collide. United Fire's formulation of the question is overly simplistic.

### B. It ignores the relevant facts of this dispute.

United Fire obviously seeks an answer that it can point to as a reasonable basis in law or fact to provide a defense under M.C.A. § 33-18-242(5). *See, e.g.,* United Fire's Answer, p. 12, Aff. Def. ¶ 2 (pleading a reasonable basis in law or

---

[4] As High Country is finalizing this brief, United Fire has filed its brief. High Country notices that United Fire has proposed to the Court a slightly different question. High Country does not have time to further analyze and respond to that new formulation.

fact). That is fair. High Country recognizes that, if United Fire establishes a reasonable basis in law or fact for its conduct, it will not be held liable for violation of the UTPA. But it is not entitled to skip the process of making such a showing by means of an imprecise and under-informative certified question.

Whether United Fire acted "reasonably," affording a potential defense to unfair claim handling, is a determination usually reserved for the jury. "Montana law holds that 'reasonableness is generally a question of fact [and] it is for the trier of fact to weigh the evidence…'" in evaluating the insurer's conduct. *Kephart v. Nat. Union Fire Ins. Co. of Pittsburgh*, No. CV-06-97-BLG-CSO, 2008 WL 11347415, at *4 (D. Mont. Feb. 5, 2008) (quoting *Dean v. Austin Mut. Ins. Co.*, 263 Mont. 386, 389, 869 P.2d 256, 258 (1994)); *see also Redies v. ALPS*, 2007 MT 9, ¶ 35, 335 Mont. 223, 150 P.3d 930 ("the assessment of reasonableness generally is within the province of the jury…."); *West for Lee v. USAA*, 2016 MT 285, ¶ 8, 385 Mont. 292, 384 P.3d 58 ("Generally, questions of reasonableness are factual matters properly answered by the finder of fact."); *cf. Palmer by Diacon v. Farmers Ins. Exchange*, 261 Mont. 91, 103–04, 861 P.2d 895, 902–03 (1993) (in the context of a third-party bad faith claim, reasonableness was for the jury to decide because "reasonable people could draw different conclusions….").

This general rule applies in cases, like this one, where the parties dispute

whether an insurer reasonably balanced its competing obligations to its insured and to an injured claimant with undisputed special damages payable in advance of full and final settlement. In *Shilhanek*, the Court granted a petition for rehearing to clarify language that might have been read to wrongly suggest that reasonableness is a question the courts can answer categorically. The Court amended its opinion to emphasize the fact-bound nature of the reasonableness inquiry, explaining that "what [the insurer] knew, and whether [it] acted reasonably in the face of that knowledge, are clearly factual issues suited to resolution by the trier of fact." *Shilhanek v. D-2 Trucking, Inc.*, 2003 MT 122A, 79 P.3d 1094 (as amended).[5]

United Fire's formulation of the question gives no hint of—and leaves no room for—the factual matters that properly bear upon the reasonableness of

---

[5] The trial court can decide reasonableness as a matter of law only "when it depends *entirely* on interpreting relevant legal precedents and evaluating the insurer's proffered defense under those precedents." *Kephart*, 2008 WL 11347415, at *5 (emphasis in original) (quoting *Redies, supra*); *see also West for Lee*, ¶ 8 ("an insurer's reasonableness is a question of law for the court to decide when the insurer's basis in law is grounded on a legal conclusion and no issues of fact remain in dispute."); *Estate of Gleason v. Central Life Ins. Co.*, 2015 MT 140, ¶ 61, 379 Mont. 219, 350 P.3d 349 (the court can decide reasonableness as a matter of law only where "no facts remained in dispute and…the question of reasonableness hinged solely on whether the insurer's decision to deny the claim was 'grounded on a legal conclusion." (quoting *Redies*, ¶ 34)); *see, e.g., Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶¶ 136–137, 345 Mont. 12, 192 P.33d 186 (the court could determine reasonableness of insurer's conduct under the UTPA as a matter of law when the parties agreed there were no fact issues for the jury to resolve).

United Fire's conduct, including:

- United Fire was actually paying the *Ridley* damages—medical bills, lost wages, etc.—and they totaled less than $200,000 at the time United Fire paid the $3,000,000 policy limits;

- Even under the most generous analysis—the claimant's demand—the alleged special damages (including largely–hypothetical future expenses) fell short of policy limits by a million and a half dollars.

- United Fire refused to provide High Country's policy to High Country (even while promptly providing it to its own coverage counsel and even the third-party claimants) until shortly before paying out policy limits;

- United Fire fast-tracked the decision, giving High Country only a matter of days to try to work on a settlement before paying policy limits and thereby destroying High Country's legitimate leverage; and

- The lawyers United Fire hired to defend its insured and to give it coverage advice both agreed that Montana law did not require payment of policy limits without a release.

## C. United Fire incorrectly assumes that the resulting "damages exceed the limits of the insured's liability policy…."

The claimant's alleged special damages—a category far broader than

undisputed damages subject to the *Ridley* analysis—totaled just over half of the available policy limits. *See* Stipulated Facts, ¶ 10. The rest of the claimed damages were for general damages such as pain and suffering, loss of enjoyment of life, and emotional distress. *Id.*

But, those damages are inherently not susceptible of measurement, instead presenting a factual issue for the jury. "There is no measuring stick by which to determine the amount of damages to be awarded for pain and suffering other than the intelligence of a fair and impartial trier of fact governed by a sense of justice; each case must of necessity depend upon its own peculiar facts. *Pfau v. Stokke,* 110 Mont. 471, 103 P.2d 672 [(Mont. 1940)]. There is no standard fixed by Montana law for measuring the value of human health or happiness. *Kelly v. John R. Daily Company,* 56 Mont. 63, 181 P. 326 [(Mont. 1919)]." *Johnson v. U.S.,* 510 F. Supp. 1039, 1045 (D. Mont. 1981), *rev'd in part on other grounds,* 704 F.2d 1431 (9th Cir. 1983).

> There is no definite standard by which the measure of compensation for mental and physical pain and suffering can be calculated. … The only requirement under Montana law in determining this element of damages is that it must be just and reasonable in light of all the facts proven at trial.

*Obserson v. U.S.,* 311 F. Supp. 2d 917, 961 (D. Mont. 2004) (citing *Were v. David,* 275 Mont. 376, 913 P.3d 625, 627 (1996)).

Thus, this case did not, and does not, present a situation where liability for damages in excess of policy limits could be easily ascertained and measured so as to be beyond dispute. Instead, the million and a half dollars in general damages that United Fire decided to pay without a release are inherently subjective *i.e.,* reasonably subject to dispute.

United Fire's proposed certified question is grotesquely misleading by omitting that significant fact.

## IV. ADDITIONAL FACTS PLAINTIFF BELIEVES ARE NECESSARY.

In addition to the Statement of Stipulated Facts agreed to by the parties, High Country believes that additional facts are necessary for a meaningful certification process. The reasonableness of United Fire's actions and the good/bad faith of United Fire in handling the underlying matter is a key factor in the Montana Supreme Court's consideration of this matter. As is often the case, when High Country agreed to the stipulated facts, the parties tried to keep them fairly "vanilla" and non-controversial, so as to reach agreement where possible, without trying to fight about facts that might seem skewed one way or the other. High Country did not, and does not, agree that the facts to which it already stipulated are an adequate basis for deciding key issues in this case.

High Country must be able to present to the Montana Supreme Court the

complete factual background regarding what transpired in the handling of the underlying claim. The Statement of Stipulated Facts does not do that. Accordingly, High Country believes the following facts are required for the certification process:

1. UFC prepared and possessed certified copies of High Country's Policy certified on October 12, 2016 (automotive, umbrella and commercial general liability) and December 27, 2016 (automotive). UFC provided those certified copies to claimants' counsel (the Edwards Firm) on or about those dates.

2. On July 12, 2017, High Country, through its independent counsel, reached out to United Fire at the contact information listed on United Fire's November 30, 2016 letter to request a copy of the Policy. United Fire did not respond.

3. The following week, High Country was advised that the claim had been reassigned to casualty claims specialist Mary Farjadi. High Country repeated its request for a copy of the Policy in an email to Ms. Farjadi on July 25, 2017. Farjadi responded but did not provide a copy of the Policy as requested. Instead, she directed High Country's independent counsel to speak to Nick Pagnotta at the Williams Law Firm, who, Farjadi explained, is "our defense counsel on this claim."

4. High Country contacted Mr. Pagnotta who responded that United Fire had not provided him with a copy of the Policy either. On August 11, 2017, High Country's independent counsel contacted Ms. Farjadi again, reiterating High Country's request for a copy of its Policy. Farjadi represented that she was unable to provide High Country with its Policy, falsely claiming that a certified copy of the policy was not yet available.

5. As of the date of the Edwards' demand letter, October 31, 2017, High Country and its independent counsel still had not received any of portions of its Policy from UFC.

6. In Mr. Pagnotta's (UFC's appointed defense counsel) November 14, 2017 letter rejecting the demand to pay policy limits without a release of High Country, Mr. Pagnotta correctly refuted the position that policy limits must be paid without a release. He noted that:

   a. UFC was already paying *Ridley* damages and would continue to do so;

   b. "this does not appear to be a case where policy limits should be tendered without a release of our client.";

   c. "The circumstances for which limits should be advanced are where undisputed outstanding special damages expenses are at or above

limits." Citing *Shilhanek*; and

    d.  "Here, United Fire has shown its willingness to pay outstanding expenses which have been submitted pursuant to *Ridley*. Given the applicable limits, however, it does not appear that outstanding special damages expenses exceed limits. Also, some of the claimed special damages and legal theories presented in your letter may be debatable."

7.  On November 17, Pagnotta finally forwarded High Country a copy of the Policy section describing High Country's commercial general liability coverage. Contrary to the suggestion of UFC's November 30, 2016 letter, the Policy contained a provision (captioned "Aircraft, Auto or Watercraft") that arguably excluded coverage for negligent maintenance, training and supervision claims related to an automotive accident covered by the commercial automotive policy. The "Aircraft, Auto or Watercraft" exclusion had not been previously provided to High Country.

8.  Although UFC had already prepared and possessed certified copies of the section of High Country's Policy describing this coverage, dated October 12, 2016, United Fire prepared a new certified copy for High Country.

The copy High Country received was certified on November 17, 2017.

9. Each certified copy of the Policy (or section of the Policy) contained a sworn certification that the attached document was a true and correct copy. Notwithstanding that certification, the certified copy of the CGL coverage section dated November 17, 2017 (provided to High Country) was different than the earlier version certified on October 12, 2016 (provided to Huso). UFC shuffled the pages in High Country's copy, apparently to give prominence to an endorsement containing an exclusion captioned "Multiple Liability Coverages Limitation," which had been moved toward the front of the document, apart from all of the other policy endorsements, just after the declaration pages and before the body of the insuring agreement.

10. On November 29 (two days after Edwards' second demand of payment of policy limits without a release of High Country), UFC's coverage counsel, Huso, wrote to United Fire, echoing Pagnotta's analysis about Edwards' overreach of *Ridley*. Huso advised UFC that:

    a. She "disagree[d]" with Edwards' interpretation of United Fire's obligations under Ridley and its progeny;

    b. "No Montana court has ever required an insurer to advance pay

general damages without a full and final release of its insured."

    c.  "The duty to advance pay prior to final settlement has been limited to those cases in which the insured's liability is reasonably clear and the third-party claimants' special damages are not reasonably in dispute."

    d.  Ridley obligations are not triggered by damages that are "wholly subjective in nature and not plainly ascertainable in amount."

    e.  "There is no authority supporting [Edwards'] assertion that UFG owes a greater duty to a third-party claimant than its own insured, or that the failure to pay limits without a release under these circumstances exposes UFG to significant bad faith/UTPA liability."

    f.  Edwards' legal authorities for demanding payment of policy limits without a release were limited to situations involving "**medical expenses** that exceeded the policy limits" (emphasis in original).

11. Less than three hours after Huso delivered her analysis, UFC Vice President and General Counsel, Neal Scharmer, responded, writing: "I think we need to advise the insured that we will likely accept the demand of payment of limits and solicit its willingness to offer additional sums.

Those letter [sic] will need to be carefully worded."

12. The next day, November 30, 2017, Huso asked another attorney at the Matovich firm, Jesse Myers, to do some further research on the CGL coverage issue and the enforceability of the exclusions United Fire had identified as a possible basis to deny High Country's demand under its CGL coverage. Myers questioned whether the Policy complied with the Montana Property and Casualty Insurance Policy Language Simplification Act, specifically including the requirement of § 33-15-337(2), MCA, that the policy "must include a table of contents and notice section of important provisions." Myers alerted Huso to the Montana Supreme Court's decision in *Montana Petroleum Tank Release Compensation Board v. Crumley's, Inc.*, 2008 MT 2, 341 Mont. 33, 174 P.3d 948, which prohibited an insurer from denying coverage based on policy provisions that failed to comply with this statutory requirement.

13. High Country's Policy did not contain the required table of contents or "notice section of important provisions," let alone a table or notice section that identified or emphasized the "Aircraft, Auto or Watercraft" or "Multiple Liability Coverages Limitation" exclusions.

14. Nonetheless, On December 1, 2017, less than a week before Edwards'

deadline, United Fire responded, through Huso, to High Country's November 9, 2017 letter. United Fire declined to make available the commercial general liability coverage, principally citing the "Aircraft, Auto or Watercraft" exclusion in the commercial general liability policy that High Country had only just received from Mr. Pagnotta, as well as the "Multiple Liability Coverages Limitation" endorsement that United Fire had moved towards the front of the Policy.

High Country understands that United Fire may not stipulate to these facts. But, that does not mean High Country should be prevented from fully presenting its case to the Montana Supreme Court, especially on such a key issue to this dispute.

## CONCLUSION

High Country agrees to certification of a question that properly frames the issues. United Fire's proposed question does not do so. The Court should certify one of the questions High Country has proposed, and should include the additional facts that High Country has proffered.

DATED this 15th day of April, 2019.

           **GOETZ, BALDWIN & GEDDES, P.C.**

           ATTORNEYS FOR PLAINTIFF
           HIGH COUNTRY PAVING, INC.

           **/s/Robert K. Baldwin**
           Robert K. Baldwin
           Trent M. Gardner
           Jeffrey J. Tierney

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(d)(2), the undersigned certifies that this Brief on Question of Certification contains 5,698 words, calculated by Microsoft Word (excluding the caption, Table of Contents, Table of Authorities and Certificate of Compliance).

*/s/ Robert K. Baldwin*
GOETZ, BALDWIN & GEDDES, P. C.