IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

FILED
MAY 09 2019
Clerk, U.S Courts
District Of Montana
Missoula Division

| | |
|---|---|
| HIGH COUNTRY PAVING, INC., <br><br>Plaintiff, <br><br>vs. <br><br>UNITED FIRE & CASUALTY CO., <br><br>Defendant. | CV 18–163–M–DWM <br><br>CERTIFICATION ORDER |

Pursuant to Rule 15(3) of the Montana Rules of Appellate Procedure, I respectfully request that the Montana Supreme Court exercise its discretion to adjudicate the following question of Montana law:

> Where liability is reasonable clear, is it a breach of an insurer's duty to its insured to pay policy limits to a third party in a motor vehicle accident without a release of its insured where claimed special damages are below policy limits but total damages (including general damages) exceed policy limits?

See Mont. R. App. P. 15(6)(a)(i). The answer to this certified question will be determinative of Count I of the Amended Complaint.[1] (See Doc. 21.) I acknowledge that your Court may decide to reformulate the question and my

---

[1] While Count I is not the subject of a dispositive motion, the absence of a legal basis for High Country's claim would warrant its dismissal. See Wong v. Bell, 642 F.2d 359, 361–62 (9th Cir. 1981). The parties have each briefed their respective positions on the question. (See Docs. 24, 25.)

1

phrasing of the question is not intended to restrict your Court's consideration of this request. *See* Mont. R. App. P. 15(4), (6)(a)(iii).

I

There appears to be an unresolved tension in Montana law between an insurer's duty to a third-party claimant, *see* Mont. Code Ann. § 33–18–201(6); *Gibson v. W. Fire Ins. Co.*, 682 P.2d 725, 730 (Mont. 1984), and its duty to its own insured, *see Fowler v. State Farm Mut. Auto. Ins. Co.*, 454 P.2d 76, 78–79 (Mont. 1969); *Draggin Y Cattle Co., Inc. v. Junkermier, Clark, Campanella, Stevens, P.C.*, ___ P.3d ___, 2019 WL 1782165, at *12 (Mont. Apr. 24, 2019) (Sandefur, J., concurring). This tension places Defendant United Fire and Casualty Company between a rock and a hard place. On one hand, United Fire has a statutory duty to accept a third-party's reasonable settlement offer within policy limits unless there is a reasonable basis for contesting the claim or the amount. *State Farm Mut. Auto. Ins. Co. v. Freyer*, 312 P.3d 403, 418 (Mont. 2013). Otherwise, United Fire could be subject to a third-party bad faith claim or waive its policy limits. *Goettel v. Estate of Ballard*, 234 P.3d 99, 102 (Mont. 2010). On the other hand, United Fire has a duty to give the interests of its insured, Plaintiff High Country Paving, "as much consideration as it gives its own," *Gibson*, 682 P.2d at 730, which arguably means obtaining a release of all future claims. The failure to do so resulted in the present litigation. Thus, this case presents a "carrier's dilemma" that is far from

2

illusory. *See Watters v. Guar. Nat'l Ins. Co.*, 3 P.3d 626, 635–36 (Mont. 2000) (minimizing the risk an insurer faces).

United Fire takes the position that where, as here, liability for damages in excess of policy limits is reasonably clear, it could not condition the payment of policy limits on a release of all claims against its insured. In support of that argument, United Fire relies on two distinct lines of Montana cases. The first has gradually limited the circumstances under which a release can be demanded. *See id.* at 638 (addressing mandatory minimum coverage under Mont. Code Ann. § 61–6–103); *Shilhanek v. D-2 Trucking, Inc.*, 70 P.3d 721, 725 (Mont. 2003) (extending *Watters* beyond minimum statutory coverage to policy limits). The second has expanded the types of damages that must be paid prior to final settlement, *see Ridley v. Guar. Nat'l Ins. Co.*, 951 P.2d 987, 992 (Mont. 1997) (requiring the payment of medical expenses); *DuBray v. Farmers Ins. Exch.*, 36 P.3d 897, 900 (Mont. 2001) ("Nothing in *Ridley* suggests that its scope should be categorically limited to medical expenses."); *Lorang v. Fortis Ins. Co.*, 192 P.3d 186, 218 n.25 (Mont. 2008) (same), where liability is reasonably clear, *see Peterson v. St. Paul Fire & Marine Ins. Co.*, 239 P.3d 904, 913 (Mont. 2010) (declaring standard); *Teeter v. Mid-Century Ins. Co.*, 406 P.3d 464, 468 (Mont. 2017) (applying *Peterson* standard to liability for special damages).

On the other hand, High Country argues that where, as here, the undisputed special damages are less than the available coverage, an insurer may breach its duty to its insured by paying policy limits without obtaining a release. High Country emphasizes Montana's distinction between damages that are plainly ascertainable and immediately payable, such as medical expenses and lost wages, and disputed general damages that can await final adjudication of the case, "such as compensation for pain, discomfort, mental distress, and punitive damages." *See Hop v. Safeco Ins. Co. of Ill.*, 261 P.3d 981, 983–84 (Mont. 2011). Where public policy supports the prompt payment of the prior, the latter generally "will not financially overwhelm an accident victim" and are "wholly subjective in nature and not plainly ascertainable in amount." *Id.* at 984. However, High Country notes that certain Montana decisions have obfuscated certainty as to liability (i.e., the *Peterson* standard), and certainty as to the amount of damages (i.e., *Ridley* payments). Even if liability is reasonably clear, an insurer can dispute a damage amount. *Teeter*, 406 P.3d at 468. According to High Country, this case did not present a situation where liability for damages in excess of the policy limits could be easily ascertained. Further, High Country argues a brightline rule that insurers do not need to negotiate for a release will cause an "insured defendant [to] face the daunting prospect of his insurer settling an otherwise defensible claim, in order to avoid bad faith litigation." (Doc. 25 at 15.)

4

While the Montana Supreme Court's recent decision in *Draggin Y Cattle Co., Inc.* highlights the complicated nature of an insurer's duties to its insured, it does not provide guidance necessary for the resolution of this case. *See* 2019 WL 1782165. Accordingly, an answer to the certified question (or some formulation thereof) is requested.

II

Pursuant to Rule 15(6)(a)(ii), the following facts, which have been stipulated to by the parties, outline the nature of the controversy from which this question arose. (*See* Sched. Or., Doc. 22 at ¶ 3.)[2]

High Country is an asphalt paving company located in Bozeman, Montana. It purchased a liability insurance policy from United Fire which includes three types of coverage: (1) commercial general liability coverage in the amount of $2 million aggregate, with a $1 million per-occurrence limit ("CGL"); (2) commercial auto liability coverage in the amount of $1 million; and (3) commercial umbrella coverage in the amount of $2 million. In August 2016, while the policy was in effect, one of High Country's employees was involved in an accident while operating an insured vehicle. While the vehicle was under way, a loaded equipment trailer came unhitched and collided with another vehicle, killing its driver and seriously injuring the passenger. High Country notified United Fire of

---

[2] The parties' stipulated facts have been formatted as a narrative here.

the incident. United Fire hired Nick Pagnotta of the Williams Law Firm to represent High Country. High Country separately retained Jeffrey Tierney and Trent Gardner of Goetz, Baldwin & Geddes PC.

On October 31, 2017, Chris Edwards, of the law firm Edwards Frickle & Culver, issued a demand letter on behalf of the injured parties, demanding payment of "High Country Paving's Policy Limits of $3,000,000.00 . . ." without release for High Country. Edwards's letter included a description of the following claimed economic damages, which totaled $1,549,881.25:

- A. Projected lost future income: $609,486.36;
- B. Medical expenses, as of the demand date: $283,991.09;
- C. Assisted living expenses, as of the demand date: $61,060.89;
- D. Projected future assisted living expenses: $595,342.91.

Edwards's letter explained that his clients would also seek compensation for general damages like pain and suffering and punitive damages.

On November 9, Tierney wrote to Pagnotta and United Fire, explaining that High Country objected to any settlement that did not include a release for High Country. On November 14, Pagnotta responded to Edwards's demand, counteroffering to resolve the claims for $3 million, including a release for High Country. On November 27, Edwards refused the counter-offer and renewed the original demand for $3 million without a release. That same day, Edwards also wrote to Tierney and demanded an additional $2.5 million from High Country.

6

On December 1, Katherine Huso, who had been retained by United Fire, wrote to Tierney, denying High Country's request for CGL coverage. Her letter also stated that United Fire was considering accepting Edwards's demand without a release for High Country. Huso advised that United would continue to provide a defense if it decided to pay policy limits without a release. On December 5, Tierney wrote to Huso, objecting to United Fire accepting Edwards's offer unless the settlement included a release. On December 8, Huso explained to Tierney that United Fire was planning to accept Edwards's settlement offer and Tierney reiterated High Country's objection. On December 8, United Fire accepted Edwards's demand for payment of $3 million without a release for High Country.

High Country continued to negotiate a separate settlement with Edwards in exchange for a release. On December 27, Tierney wrote to United Fire advising it that High Country had an opportunity to settle and secure a release in exchange for $1.275 million plus the assignment of certain legal claims. High Country offered to let United Fire fund the $1.275 million cash component of the settlement. High Country also offered to reject the settlement and proceed with litigation if United Fire would agree to defend and indemnify High Country without reservation. On December 28, Huso responded, again explaining why United Fire believed there was no CGL coverage and stating that United Fire was not willing to pay the proposed $1.275 million settlement or defend and indemnify High Country without

7

any reservation. But, United Fire offered to defend High Country. On February 5, 2018, High Country settled with Edwards's clients for $1.275 million plus the assignment of certain potential legal claims, in exchange for a release.

High Country's liability for causing the accident was reasonably clear and, prior to its final settlement, United Fire had made all *Ridley* payments.[3]

III

The following is a list of counsel appearing in this matter, *see* Mont. R. App. P. 15(6)(a)(iv):

Counsel for Plaintiff High Country Paving:

Jeffrey J. Tierney, Robert K. Baldwin, & Trent M. Gardner
Goetz, Baldwin & Geddes, P.C.
35 North Grand
P.O. Box 6580
Bozeman, MT 59771
406-587-0618

Counsel for Defendant United Fire & Casualty Co.:

Jon T. Dyre
Crowley Fleck PPL – Billings
490 North 31st St., Suite 500
P.O. Box 2529
Billings, MT 59103
406-252-3441

---

[3] High Country's claims also include United Fire's failure to provide it with the relevant Policy language. High Country requested a copy of its Policy on July 12, 25 and August 11, 2017. The automotive and umbrella coverages were provided on November 1, and the remaining part of the Policy describing CGL coverage was provided on November 17.

8

IV

Accordingly, IT IS ORDERED that the Clerk of Court shall forward a copy of this order to the Montana Supreme Court, along with copies of all briefs and exhibits that have been filed with this Court. The parties shall notify the Clerk of this Court within 14 days of any decision by the Montana Supreme Court to accept or decline certification. If the Montana Supreme Court accepts certification, the parties shall then notify the Clerk of this Court within 14 days of the issuance of that Court's opinion.

DATED this 9th day of May, 2019.

Donald W. Molloy, District Judge
United States District Court