Robert K. Baldwin
Trent M. Gardner
Jeffrey J. Tierney
**GOETZ, BALDWIN & GEDDES, P.C.**
35 North Grand
P.O. Box 6580
Bozeman, MT  59771-6580
Ph:    406/587-0618
Fax:   406/587-5144
email: rbaldwin@goetzlawfirm.com
        tgardner@goetzlawfirm.com
        jtierney@goetzlawfirm.com

Attorneys for High Country Paving, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, MISSOULA DIVISION

| | |
|---|---|
| HIGH COUNTRY PAVING, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED FIRE & CASUALTY CO., <br><br> Defendant. | Cause No. 18-163-M-DWM <br> Hon. Donald W. Molloy <br><br> **BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………...………………...3

APPENDIX OF EXHIBITS………………………………………………………5

INTRODUCTION……………………………………………………………..……6

DISCUSSION………………………………………………………………………8

I.     THE PRIVILEGE HAS BEEN BROADLY WAIVED BY UFC'S
       CLAIMED RELIANCE ON ADVICE OF COUNSEL…………….………9

       A.     The privilege and the advice-of-counsel defense are
              mutually exclusive……………………………………...……………..9

       B.     The waiver is broad and the party claiming reliance on advice
              of counsel cannot unilaterally limit it………………………......…11

       C.     The scope of the waiver does not depend on whether (or not)
              The interests of the insurer and insured were aligned…………....…12

       D.     The subject matter waiver encompasses communications
              with any attorneys about the subject………………………………...14

       E.     The waiver should not be limited in time……………………………16

II.    UFC ALSO WAIVED ITS PRIVILEGE BY ITS DECISION TO
       OFFER ITS ATTORNEYS AS EXPERTS……………………………..23

III.   ANY OTHER UFC WORK PRODUCT IS ALSO
       DISCOVERABLE DUE TO WAIVER…………………………………27

IV.    ANY WORK PRODUCT PROTECTION THAT HAS NOT BEEN
       WAIVED SHOULD YIELD TO THE NEEDS OF THE CASE………...27

CONCLUSION……………………………………………………..…28

## TABLE OF AUTHORITIES

**CASES**

*Ammondson v. Northwestern Corp.*, 2009 MT 331, 353 Mont. 28, 220 P.3d 1…..…10

*Apex Eyewear v. E'lite Optik*, 276 F. Supp. 2d 1084 (D. Nev. 2003)………………25

*BASF Aktiengesellschart v. Reilly Ind.'s, Inc.,*
    283 F. Supp. 2d 1000 (S.D. Ind. 2003)…………………………………18, 21

*Beneficial Franchise Co. v. Bank One*, 205 F.R.D. 212 (N.D. Ill. 2001)……………17

*In re Buspirone Patent Litigation*, 210 F.R.D. 43 (S.D.N.Y. 2002)…………..…….12

*Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156 (9th Cir.1992)………………….…..9

*Chiron Corp. v. Genentech, Inc.*, 179 F. Supp. 2d 1182 (E.D. Cal. 2001)………..16–17

*CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176 (D. Del. 2003)……………25

*Dion v. Nationwide Mutual Ins. Co.*, 185 F.R.D. 288 (D. Mont. 1998)……...*passim*

*In re EchoStar Comm.'s Corp.*, 448 F.3d 1294 (Fed Cir. 2006)………………*passim*

*EEOC v. Rekrem,*
    No. 00 Civ. 7239(CBM), 2002 WL 27776 (S.D.N.Y. Jan. 10, 2002)………17

*Emejota Eng. v. Kent. Polymers, Inc.*,
    No. 80-3523, 1985 WL 4019 (E.D. Penn. Nov. 27, 1985)…………………..18

*Garcia v. Patton*, No. 14-cv-01568, 2015 WL 1261521 (D. Colo. Jul. 9, 2015)……...25

*Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995)…………………………12

*JJK Mineral Co. v. Swiger*, 292 F.R.D. 323 (N.D.W.V. 2013)………………...17, 26

*Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp.*,
   No. 94 CV 4725, 1997 WL 272405 (S.D.N.Y. May 21, 1997)………………17

*In re Marriage of Perry*, 2013 MT 6, 368 Mont. 211, 293 P.3d 170…………………10

*Multiform Dessicants, Inc. v. Stanhope Prod's Co., Inc.*,
   930 F. Supp. 45 (W.D.N.Y. 1996)……………………………….……………25

*Palmer by Diacon v. Farmers Ins. Exch.*,
   261 Mont. 91, 108, 681 P.2 895 (1993)……………………..…………….*passim*

*In re Rules of Professional Conduct*, 2000 MT 110, 299 Mont. 321, 2 P.3d 806…….13

*Shilhanek v. D-2 Trucking, Inc.*, 2003 MT 122, 315 Mont. 519, 70 P.3d 721………20

*SNK Corp. of Am. v. Atlus Dream Ent. Co.*, 188 F.R.D. 566 (N.D. Cal. 1999)…….18

*U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364 (4th Cir. 2015)……………………15

*U.S. v. Bush*, 626 F.3d 537 (9th Cir. 2010)………………………………....…9–10

*U.S. v. Ortland,* 109 F.3d 539 (9th Cir. 1997)………………………………....9

*U.S. v. Sierra Pacific Ind's*,
   No. Civ. S-09-2445, 2011 WL 2119078 (E.D. Cal. May 26,2011)……...24–25

*U.S. v. W.R. Grace*, 439 F. Supp. 2d 1125 (D. Mont. 2006)…………………9, 11–12

*Watters v. Guaranty Nat. Ins. Co.*, 2000 MT 150, 300 MT 91, 3 P.3d 626……..…20

*Weil v. Inv. Indic.'s, Res. & Mgmt.*, 647 F.2d 18 (9th Cir. 1981)……………….....12

## SECONDARY SOURCES

Edna S. Epstein, The Attorney-Client Privilege and the
   Work Product Doctrine (ABA 2007)………………………….…12, 14, 25

## APPENDIX OF EXHIBITS

United Fire's Disclosure of Hybrid Experts ………………………………..…Ex. 1

United Fire's Privilege Log……………..…………………………………...Ex. 2

Relevant discovery request and response………………………………………..Ex. 3

Dec. 27, 2017 letter from Tierney to UFC/Huso………………………………Ex. 4

Dec. 28, 2017 letter from Huso to Tierney……………………………….…Ex. 5

Jun. 20, 2018 letter from UFC/Scharmer to Baldwin…………………..………Ex. 6

Nov. 29, 2017 emails between Huso and Scharmer…..………………………...Ex. 7

Dec. 1, 2017 letter from Huso to Tierney……………………………..……..Ex. 8

## INTRODUCTION

United Fire & Casualty Co. ("UFC") has raised an advice-of-counsel defense in this case. *See Answer to First Amended Complaint* (Doc. 26), p. 22. UFC has also designated several of its attorneys, including its outside coverage counsel Katherine Huso and its in-house counsel Neal Scharmer, as expert witnesses. *See UFC's Disclosure of Hybrid Experts* (Ex. 1) (also designating attorneys Guy Rogers, Jon Wilson, and Nick Pagnotta). Both the advice-of-counsel defense and the expert witness designations have put UFC's counsel's advice at issue, waiving the protections of the attorney-client privilege and the work product doctrine.

But, UFC now resists discovery about Ms. Huso's and Mr. Scharmer's knowledge and involvement. UFC withholds portions of Ms. Huso's files and communications after December 8, 2017, the day UFC agreed to surrender policy limits without a release for its insured, High Country. *See* UFC Privilege Log (Ex. 2). UFC also withholds its internal work product and communications, including Mr. Scharmer's, after the same date. *See id*; *see also* Ex. 3, pp. 12–19 (High Country's RFP 3–5 and 8 and UFC's responses and objections thereto).

UFC apparently believes that, after waiving the privilege, discovery is still bounded by the question of when the interests of the insurer and its insured diverged. That is not the law. Certainly, whether the interests of an insurer and its

insured are aligned is relevant to the privilege analysis, but not in the way UFC believes. An insured is presumptively entitled to its insurer's entire file, including attorney-client communications, so long as their interests remain aligned because the law assumes that the insurer's work was performed "primarily on behalf of the insured." *Palmer by Diacon v. Farmers Ins. Exch.*, 261 Mont. 91, 108, 114–15, 681 P.2 895, 905–06, 910 (1993). Once the insurer and its insured find themselves at loggerheads, the insurer may assert a privilege against its insured. *Id.* Thus, the demise of the insurer-insured community of interest marks the point that the privilege can *begin*. It does not mark the boundaries of a subsequent voluntary waiver that causes it to *end*. To limit waiver to the period before UFC decided to elevate its interests over High Country's would be no waiver at all.

Full and fair discovery about UFC's legal advice is also necessary because of the curious circumstances under which that advice was given, described further below. Despite claiming good faith reliance on counsel's advice and naming Ms. Huso as an expert to speak to the correctness of what UFC did, UFC's actions were the exact opposite of what Ms. Huso advised in writing prior to December 8, 2017. The partial record UFC has produced shows it specifically disregarded Ms. Huso's advice and Mr. Scharmer directed a different course of action. UFC now contends that Ms. Huso changed her mind, validating UFC's conduct after it

already decided and announced what it was going to do against its counsel's advice. *See* Ex. 1, p. 17. Yet, UFC withholds later documents and communications that might shed light on this discrepancy. Fundamental fairness requires discovery about Ms. Huso's and Mr. Scharmer's respective legal opinions, how they reached them, and, as for Ms. Huso, how and why those opinions changed.

High Country's motion should be granted. The Court should find a subject matter waiver, compel UFC to produce the communications specified in High Country's motion, and permit discovery about UFC's legal advice.

## DISCUSSION

This case is similar to *Dion v. Nationwide Mutual Ins. Co.*, 185 F.R.D. 288, 292 (D. Mont. 1998). Like UFC, the defendant-insurer in *Dion* argued it was entitled it to withhold portions of its claims file and communications with its attorneys based on attorney-client privilege and the work product doctrine. It withheld information after a certain date, which the defendant perceived to mark the end the underlying claim and the start of a first-party claims handling dispute under the Montana Unfair Trade Practices Act ("MUTPA"). Also like this case, the defendant named its attorney as an expert in the MUTPA case. The court rejected the defendant's privilege and work product arguments, holding:

(1)     By making its attorney an expert, the defendant "assumed the risk" of

torpedoing its privilege, *id.* at 295–96, and waived work product pro-
tection "with respect to the remainder of the claims file[,]" *id.* at 293;

(2)     Had the defendant asserted an advice-of-counsel defense, like UFC
        has done here, "any and all communications with its attorney would
        clearly be discoverable" without limitation, *id.* at 295;

(3)     In such a case, the need for information about the insurer's internal
        processes was "overwhelming," permitting disclosure of attorney
        work product even apart from the voluntary waiver, *id.* at 293; and

(4)     The ordinary and opinion work product of the insurer's non-attorney
        agents was also "clearly discoverable." *Id.*

Like *Dion*, UFC is not entitled to draw a line in the sand and, after waiving
the privilege, selectively screen certain information from discovery. UFC
"assumed the risk" of waiver by invoking an advice-of-counsel defense and
cemented the waiver by disclosing its attorneys as experts. Also like *Dion*,
irrespective of these broad waivers, UFC's work product is discoverable anyway.

## I.     THE PRIVILEGE HAS BEEN BROADLY WAIVED BY UFC'S CLAIMED RELIANCE ON ADVICE OF COUNSEL.

### A.     The privilege and the advice-of-counsel defense are mutually exclusive.

The attorney-client privilege and work product doctrine are subject to

limitations rooted in considerations of fundamental fairness. *U.S. v. W.R. Grace*,

439 F. Supp. 2d 1125 (D. Mont. 2006) summarized:

> The Ninth Circuit has held that a defendant claiming to have relied upon the advice of counsel cannot selectively waive the attorney-client privilege with respect to communications that tend to show that he relied upon advice of counsel while simultaneously refusing to disclose other communications pertaining to the same subject. *United States v. Ortland,* 109 F.3d 539, 543 (9th Cir. 1997) (quoting *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1162 (9th Cir.1992)). In such cases, the Circuit has held, the defendant uses the privilege as a "sword" to attack the case against him and as a "shield" to prevent the disclosure of communications that might undermine the advice of counsel defense. *Id.* This tactic is impermissible where it denies the opposing party an opportunity to view "the very information [it] must refute." *Chevron,* 974 F.2d at 1162. … Where a single defendant claims to have relied upon advice of counsel but uses the privilege to keep related communications from his opponent, the defendant gains an unfair tactical advantage by taking two incompatible positions. The strong incentive for a single defendant to engage in such gamesmanship requires that it be discouraged and prohibited where necessary.

*W.R. Grace*, 1125 F.Supp.2d at 1144; *see also Dion, supra* (work product protection

is waived for the same reasons). Thus, documents and communications bearing on

elements of the defense are discoverable.

To prevail on such a defense, the defendant must prove and submit to

discovery about whether: (1) it "fully advised" its counsel about its intended

actions and disclosed all relevant facts; (2) counsel gave advice regarding the contemplated action; and (3) the client "followed that exact advice in good faith." *U.S. v. Bush*, 626 F.3d 537, 539 (9th Cir. 2010); *Ammondson v. Northwestern Corp.*, 2009 MT 331, ¶ 50, 353 Mont. 28, 220 P.3d 1 (describing analogous elements).

Federal common law is consistent with Montana law. *Palmer*, *supra*, explained the triggering events for an advice-of-counsel waiver. Merely designating attorneys as witnesses who "would testify to factual matters, but would not testify regarding confidential privileged information…" is not a waiver. *Id.*, 261 Mont. at 110, 861 P.2d at 906. Nor is the privilege waived simply because a litigant received legal advice and acted upon it, *id.* at 110, 861 P.2d at 907, or else the privilege would be so fragile that it would yield in every case. But, the privilege is surrendered when a litigant claims to have "directly relie[d] on advice of counsel as a defense…." *Id.*; *see also In re Marriage of Perry*, 2013 MT 6, ¶ 39, 368 Mont. 211, 293 P.3d 170. In other words, when a defendant takes up the "sword" by pleading advice of counsel, it must surrender the "shield" and give up any claim of privilege or work product protection so the defense can be fairly tested.

**B.    The waiver is broad and the party claiming reliance on advice of counsel cannot unilaterally limit it.**

An advice-of-counsel waiver broadly extends to all communications pertaining to the same subject matter. *W.R. Grace*, 1125 F. Supp. 2d at 1144; *see also*

*Weil v. Inv. Indic.'s, Res. & Mgmt.*, 647 F.2d 18, 24 (9th Cir. 1981) (fairness requires that voluntary disclosure of any privileged communications waives the right to claim privilege as to "all other such communications on the same subject."); Edna S. Epstein, 1 <u>The Attorney-Client Privilege and the Work Product Doctrine</u>, p. 513 (ABA 2007) ("A client may not rely on 'advice of counsel' as the basis of a defense of a claim without waiving all privileged communications on that issue.").

As one court explained, it is "clear" that a litigant "cannot in fairness try to tailor an advice-of-counsel defense in an unfairly prejudicial way, so as to provide all the documents relating to the advice of counsel up until a certain arbitrary date...." *In re Buspirone Patent Litigation*, 210 F.R.D. 43, 53 (S.D.N.Y. 2002).

> There is an inherent risk in permitting the party asserting a defense of its reliance on advice of counsel to define the parameters of the waiver of the attorney-client privilege as to that advice. That party should not be permitted to define selectively the subject matter of the advice of counsel on which it relied in order to limit the scope of the waiver of the attorney-client privilege and therefore the scope of discovery. To do so would undermine the very purpose behind the exception to the attorney-client privilege at issue here—fairness.

*Id.* (quoting *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995)).

## C. The scope of the waiver does not depend on whether (or not) the interests of the insurer and insured were aligned.

UFC's effort to limit discovery about *portions* of *some* of its attorneys' advice

illustrate the above warning about allowing a defendant to define the scope of the waiver. UFC mistakenly seeks to define the scope of the waiver based, not on subject matter as the law requires, but on whether it had yet taken any overt actions contrary to the interests of its insured.

Montana law recognizes that, so long as their interests align, insurer and insured coexist in a "privileged community or magic circle" in which confidential information can be shared. *In re Rules of Professional Conduct*, 2000 MT 110, ¶ 57, 299 Mont. 321, 2 P.3d 806. Unless and until adversity arises that creates a disunity in the insurer-insured relationship—like UFC's decision to unconditionally pay policy limits, leaving High Country exposed to potential excess liability—the attorney-client privilege and work product doctrine cannot be invoked by the insurer as against its insured. *Palmer*, 251 Mont. at 108, 861 P.3d at 905–06.

These authorities describe the circumstances in which defendant-insurers can claim privilege. They do not hold that the insurer's separate privilege, once it arises, cannot be waived. UFC thus misconstrues Montana law describing when an insurer's separate privilege begins. High Country does not dispute that UFC would have been entitled to withhold confidential communications with its counsel, or work product created by or in collaboration with counsel, after December 8, except for its subsequent waiver.

### D. The subject matter waiver encompasses communications with any attorneys about the subject.

Because the advice-of-counsel defense depends on the defendant's "good faith" adherence to its counsel's advice, the subject matter waiver extends beyond the advice of the specific attorney whose advice the defendant claims to have followed. 1 Epstein, *supra*, pp. 512–13 (citing numerous cases). Whether the defendant acted in good faith is informed by whether the advice was reasonable and whether the client had a reasonable basis to believe the advice was sound. Thus, when the defense is raised, "not only has the entirety of the attorney's advice on the same subject matter become discoverable, but any corollary advice given by other attorneys on the same issue also becomes discoverable." *Id.* at 516–17.[1]

For example, a defendant may not strategically consult with three, or four, or five attorneys and then try to limit discovery by only claiming "reliance" on the advice of the most tractable counselor who told the defendant what it wanted to hear. The opposing party is entitled to test the defense by exploring any other advice the client might have solicited or received from others on the same subject, whether that advice was followed or not. *see, e.g., U.S. ex rel. Drakeford v. Tuomey*,

---

[1] Although some courts have found advice-of-counsel waivers can extend to trial counsel, High Country does not seek communications involving *only* Mr. Dyre and representatives of UFC that have not been named as experts.

792 F.3d 364, 380–81 (4th Cir. 2015) (the jury was entitled to weigh reasonableness of client's reliance on counsel's advice in light of competing advice given by other attorneys).

For this reason, UFC may not selectively disclose the complete files of some of its attorneys while withholding parts of Huso's file. Nor may it disclose the advice its attorneys gave on this subject at one point in time but withhold other communications and documents generated at different times, as discussed further in the following section.

Similarly, because Mr. Scharmer was acting as UFC's in-house counsel in handling the claim, his communications and work product are discoverable too regardless of whether UFC intends to claim reliance on his specific advice as part of its defense. *See In re EchoStar Comm.'s Corp.*, 448 F.3d 1294, 1299 (Fed Cir. 2006) (advice-of-counsel waivers apply equally to in-house counsel and outside counsel; when a defendant claims reliance on the advice of one attorney, it waives the privilege as to all); *accord Drakeford, supra*.

To the extent UFC solicited or received advice from other attorneys who have not been disclosed because UFC denies having "relied" on their advice, their identities, opinions and communications are also discoverable for the same reasons.

### E.  The waiver should not be limited in time.

When an advice-of-counsel defense has been raised, courts also find a broad waiver as to time. That is because subsequent communications and work product may shed light on the advice that was given, what the client and the attorney knew, whether a full disclosure of the pertinent facts was made, how and whether the attorney's advice was followed, and whether the client acted in good faith.

*Chiron Corp. v. Genentech, Inc.*, 179 F. Supp. 2d 1182 (E.D. Cal. 2001) explained:

> While privileges serve a useful purpose in our adversary system, they should not exceed their legitimate raison d'etre. In similar vein, where the law demands a waiver of privileges, the scope of the waiver should not be unduly circumscribed. Thus, the court is not inclined to view the scope of the waiver in this case in a fashion that would unfairly keep information from the factfinder which is both relevant and sufficiently related to the issues discussed in the opinion letter [i.e. the advice upon which the defendant claimed to have relied].

*Id.* at 1186.

To avoid "unduly circumscrib[ing]" the waiver, *Chiron* found that while some courts have "cut[] off the waiver at the time of filing of the action, the better authority requires that *all* communications, both pre and post-complaint file should be disclosed." *Id.* at 1188. When a party chooses to put its attorney-client

confidences at issue by pleading advice of counsel, "fairness is served by allowing the opposing party to have access to documents casting doubt or contradicting those opinions[,]" regardless of when such documents or statements were made. *Id.* (quoting *Beneficial Franchise Co. v. Bank One*, 205 F.R.D. 212, 218 (N.D. Ill. 2001)); *see also Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp.*, No. 94 CV 4725, 1997 WL 272405 (S.D.N.Y. May 21, 1997) (once the defense is raised, the inquiry for determining the scope of the waiver is not when a communication took place but whether it is related to the subject matter in question).

Many courts have found that communications and work product that post-date the act taken in reliance on counsel's advice, even after a lawsuit was initiated, may be probative of the knowledge of the defendant and its counsel, their intent, and other elements of the defense. *See, e.g., EEOC v. Rekrem*, No. 00 Civ. 7239(CBM), 2002 WL 27776 (S.D.N.Y. Jan. 10, 2002) (while conceding that "pre-filing communications are more apt to be probative of good faith than post-filing communications," the waiver is not limited in time); *JJK Mineral Co. v. Swiger*, 292 F.R.D. 323, 335 (N.D.W.V. 2013) (enforcing waiver through the date of filing, noting that all such communications are probative of the advice given and necessary full disclosure) (citations omitted)); *Emejota Eng. v. Kent. Polymers, Inc.*, No. 80-3523, 1985 WL 4019 (E.D. Penn. Nov. 27, 1985) ("The waiver applies to all

communications concerning that same subject matter both before and after the occurrence of the waiver."); *EchoStar, supra* (claimed reliance on pre-filing advice of in-house counsel waived privilege and work product protection as to post-filing advice of outside counsel on the same topic); *SNK Corp. of Am. v. Atlus Dream Ent. Co.*, 188 F.R.D. 566, 574 (N.D. Cal. 1999) (the waiver extends to post-filing communications which "may shed light on the defendant's state of mind" with respect to earlier actions and are also probative of what counsel knew).

Courts generally follow one of three approaches in defining the temporal scope of an advice-of-counsel waiver. *See BASF Aktiengesellschart v. Reilly Ind.'s, Inc.,* 283 F. Supp. 2d 1000 (S.D. Ind. 2003). Like *Chiron, supra*, and most of the above cases, most courts hold that the scope of the waiver is limited only by subject matter, so it "extends beyond the filing of suit through trial…." *BASF*, 283 F. Supp. 2d at 1005 (citing cases). A more conservative approach taken by some courts limits the waiver to "communications and documents created prior to suit." *Id.* at 1005–06 (citing cases). A third "middle ground" approach, usually employed when counsel in the underlying dispute is also trial counsel, seeks to ensure fairness while still protecting litigation opinion work product by drawing a presumptive cut-off date at the filing of the case, but still  permitting discovery of any later documents or communications which may "contradict or cast doubt on the earlier

opinions." *Id.* at 1006 (citing cases). Of course, this last option presents the same problem of the "fox guarding the hen house" and may require extensive privilege logs and laborious *in camera* review.

In contrast with these approaches, UFC asks the Court to draw the line at December 8, 2017, some nine months before this case was filed (on Aug. 21, 2018), three months before the underlying dispute was fully and finally resolved (by agreement executed Feb. 5, 2018) and several weeks before High Country even reached an agreement in principle to settle its own liability (on Dec. 29, 2017). Until February, the underlying claim was pending and UFC still owed duties to its insured. Moreover, High Country and UFC continued to engage with these issues in the coming months, including through Scharmer and Huso. For example:

- Later in December, after UFC agreed to pay policy limits, High Country correspondend with UFC about the problems it had created and gave UFC an opportunity to fix the situation by financing a separate settlement for High Country or agreeing to defend without reservation. Ex. 4. Ms. Huso responded for UFC, doubling down on the position UFC took earlier that month and inviting further discussion about the *Watters/Shilhanek* issue. Ex. 5; *see also* Ex. 2 (reflecting email exchanges involving Huso on December 27–28);

- Huso continued to correspond with UFC and its agents about these issues through the month of February. *See* Ex. 2;

- High Country sent the requested legal authority to UFC (again through Huso) on May 25, 2018, explaining the problems caused by UFC's failure to secure a release for its insured. UFC responded on June 20 through Mr. Scharmer. Rather than engaging with the authorities High Country provided, as Ms. Huso had invited, Scharmer stated only that UFC had "carefully considered its obligations" under Montana law in deciding to unconditionally surrender policy limits, Ex. 6, presumably referring to the attorneys whose advice UFC obtained but will not fully disclose.

Counsel's further involvement in these post-December 8 discussions about UFC's obligations under *Watters/Shilhanek* is directly related to the subject matter of this case and probative of UFC's advice-of-counsel defense.

The fairness considerations that demand a broad waiver are particularly compelling here, given the apparent contradiction between Ms. Huso's written advice and what UFC actually did. *See BASF, supra* (explaining that fairness dictates a broader waiver, extending post-suit, when a defendant alters its position relative to counsel's advice). UFC did not follow the only written advice that Ms.

Huso—or anyone attorney, for that matter—is known to have provided. Ms.

Huso's written advice to UFC and Mr. Scharmer was that:

- There was "no authority" for the claimant's ideas about UFC's
  supposedly superior duties to the claimants;

- *Watters* and *Shilhanek* were distinguishable from this case; and

- "[N]o Montana court has ever required an insurer to advance pay
  general damages without a full and final release of its insured."

*See* Ex. 7 (Nov. 29 Huso e-mail to Scharmer).

Within just a few hours, Mr. Scharmer responded, ignoring Ms. Husos's

advice and indicating that UFC was going to surrender policy limits anyway. *Id.*

(Nov. 29 Scharmer response to Huso, adding that the letter to High Country about

this decision "will need to be carefully worded."). A few days later, Ms. Huso sent

the referenced "carefully worded" letter to High Country on behalf of UFC,

announcing UFC's decision to surrender policy limits without a release and

claiming it was "obligated" to do so under *Watters/ Shilhanek*, contradicting

Huso's own written analysis. *See* Ex. 8 (Dec. 1 Huso letter to Tierney).

UFC nevertheless claims good faith reliance on advice of counsel apparently

because, *the day after* Mr. Scharmer advised Ms. Huso of what UFC had already

decided to do, Huso recanted her original written advice. *See* Ex. 1, p. 17.  Under

these circumstances, subsequent communications involving Ms. Huso are highly probative of her claimed change of heart and whether UFC did, in fact, rely in good faith on its counsel's advice. High Country is entitled to know whether subsequent communications are consistent with UFC's defense, including:

- Whether later communications reveal the substance of Ms. Huso's opinion after she allegedly changed it;

- What information was given to Huso that made her change her mind;

- Whether later communications tend to prove (or disprove) that UFC fully disclosed the pertinent facts to Ms. Huso; and

- Whether Ms. Huso's later advice and analysis, in the following weeks and months, was consistent with her original opinion of November 29 or with her supposed later revised opinion.

High Country is likewise entitled to investigate Mr. Scharmer, who was involved in many of the same communications and otherwise actively involved in discussing these issues over the same period of time. Fairness requires that High Country be permitted to discover:

- What information and advice informed Mr. Scharmer's decision that UFC would do the opposite of what Ms. Huso advised; and

- What his own advice and analysis was, in order to compare it with the

advice of UFC's outside counsel. *See EchoStar, supra.*

These ongoing communications illustrate the scope of the subject matter waiver. By asking the Court to draw a line at December 8, UFC conjures an artificial distinction between advice and work product about the potential third-party claims UFC feared if it *did not* pay policy limits without a release, and advice about High Country's first-party claims if UFC *did* pay policy limits without a release. These are two sides of the same coin, involving the same factual and legal issues. UFC cannot selectively disclose advice it received about its obligations to the third-party claimants and withhold corollary advice about its reciprocal obligations to High Country in the same settlement.

For these reasons, the Court should find a subject matter waiver encompass-ing all attorney-client communications and work product regarding the settlement of the claims against High Country, without limitation as to time, excluding only trial counsel's work product and any communications between trial counsel and UFC agents who have not been designated as experts. At minimum, the Court should compel UFC to respond to discovery through the start of this case on August 21, 2017.

## II.   UFC ALSO WAIVED ITS PRIVILEGE BY ITS DECISION TO OFFERS ITS ATTORNEYS AS EXPERTS.

Unlike situations where attorneys are only called as lay witnesses to testify

about unprivileged factual matters, *see Palmer*, 261 Mont. at 110, 861 P.2d at 906, a

litigant's decision to designate its attorney as an expert witness is a waiver, *see id.*;

*Dion*, 185 F.R.D. at 295–96.

While the rules afford some limited work product protection for experts who

are specifically retained for purposes of litigation, there are no such protections for

testifying but non-reporting (i.e. hybrid) experts like Ms. Huso and Mr. Scharmer.

*See* FED. R. CIV. P. 26(b)(4); *U.S. v. Sierra Pacific Ind's*, No. Civ. S-09-2445, 2011

WL 2119078, at *5 (E.D. Cal. May 26,2011) (Rule 26 "does not provide protection

for communications between non-reporting experts and counsel" and the 2010

amendments did not change the traditional rule that designation of such an expert

is a waiver as to their communications and work product).

The court in *Sierra Pacific* explained: both "[b]efore and after" the

amendments to the rule, "courts within the Ninth Circuit held that privileges and

protections were waived for communications between a party's attorney and a

testifying expert." *Id.* at *9. Thus, as to the attorney-witnesses who had percipient

knowledge of the underlying facts and had been designated as hybrid experts by

their client, their communications and work product were not protected. *See also*

*CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del. 2003) (once a

witness has been designated as a testifying expert, the die is cast and the waiver

cannot be undone); *Multiform Dessicants, Inc. v. Stanhope Prod's Co., Inc.*, 930 F. Supp. 45 (W.D.N.Y. 1996) (echoing *Dion*, where a litigant chooses to name its attorney as an expert, "fundamental fairness" requires that it "bear the risk" of waiver); *Garcia v. Patton*, No. 14-cv-01568, 2015 WL 1261521 (D. Colo. Jul. 9, 2015) (approving *Sierra Pacific's* holding and explaining that an expert designation must result in waiver or else "potential biases in [the witness's] testimony…would be shielded from the fact-finder.").

Work product protection is also generally waived as to anything shared with a testifying expert. *See* 2 Epstein, *supra*, p. 996 ("Increasingly, the tendency seems to be to require the production of all materials, including pure opinion work product, given to experts who will be testifying….It is strongly urged that this is the correct decision for a multiplicity of reasons…" including impeachment and fair discovery of the bases for the expert's opinion (citing various cases)).

In situations like this where litigants stack multiple overlapping waivers by claiming advice-of-counsel (blowing the privilege, at a minimum, as to pre-suit communications) *and* naming the same attorney as an expert (allowing further discovery of the basis for their opinions), courts have found a broad waiver not limited as to time. *See, e.g., Apex Eyewear v. E'lite Optik*, 276 F. Supp. 2d 1084, 1095–96 (D. Nev. 2003) (although the court have might otherwise been "inclined

to impose a temporal limitation on the [advice-of-counsel] waiver at the point the lawsuit was filed…" the defendant's designation of its former counsel as an expert required a broader waiver); *JJK Mineral*, 292 F.R.D. at 335 (citing *Apex, supra*).[2]

To the extent any temporal limitations on the waiver might have been appropriate for the advice-of-counsel waiver, those limitations are unnecessary due to UFC's expert designations. To the extent any of UFC's communications with its experts might have otherwise been entitled to some limited work product protection, UFC has surrendered that right by its advice-of-counsel defense. The advice-of-counsel defense and the expert designations are independent reasons to find a waiver in this case. Together, the overlapping waivers require a full and fair disclosure of all of the communications and work product of UFC's attorneys.

Again, the fairness considerations favoring a broad waiver are particularly strong in this case given the unusual timing and circumstances of UFC's counsel's advice relative to its decision-making process. Ms. Huso's expert disclosure acknowledges her original written opinion that offers no support for what UFC did. *See* Ex. 1, p. 17. It also indicates she will offer expert testimony about the correctness of the contradictory opinion she is said to have given later, apparently

---

[2] The Court in *Apex* also found a broad waiver of later work product because, also like this case, the advice the defendant claimed to have relied on was not reduced to writing, impeding fair cross-examination. *Apex*, 276 F. Supp. 2d at 1095–96.

to ratify the decision that UFC had already made. *Id.* Given the appearance that it was UFC advising its counsel, rather than the other way around, fairness requires that High Country be permitted to fully explore the bases for Ms. Huso's opinions including for purposes of cross-examination and impeachment.

## III.   ANY OTHER UFC WORK PRODUCT IS ALSO DISCOVERABLE DUE TO WAIVER.

As for UFC's belief that it is entitled to withhold internal (non-attorney) correspondence and work product, notwithstanding the subject matter waiver, it is not clear that these materials are privileged or protected work product at all except to the extent they were generated in collaboration with or at the direction of counsel. To the extent these materials are protected, they are also within the scope of the advice-of-counsel waiver and subject to disclosure. *See Dion, supra* (both attorney work product and ordinary work product of insurer's non-attorney employees deemed discoverable, permitting discovery of everything in the claims file even after insurer and insured became adverse); *Echostar, supra* (communications with and work product by in-house counsel are within the scope of the subject matter waiver).

## IV.   ANY WORK PRODUCT PROTECTION THAT HAS NOT BEEN WAIVED SHOULD YIELD TO THE NEEDS OF THE CASE.

To the extent the Court finds there are any remaining work product

protections that have not been waived, the Court should permit work product discovery anyway. Work product protection may be overcome upon a showing of compelling need. While such a need does not exist in every claims handling or bad faith dispute, *Siddall v. Allstate Ins. Co.*, 15 Fed App'x 522, 523 (9th Cir. 2001), fair resolution of this case requires discovery of UFC's attorney work product to understand the curious circumstances by which counsel came to change her opinion, apparently giving the advice that approved UFC's course of action after that course had already been decided. This information is in the sole custody of UFC, Mr. Scharmer and Ms. Huso and is necessary to fairly test the advice-of-counsel defense and cross-examine these witnesses.

## CONCLUSION

UFC has waived its right to claim privilege or work product protection regarding its handling of the High Country settlement, without limitation as to time. The Court should compel UFC to produce *not only* the attorney-client communications and related work product that it relied on, but all other attorney-client communications and work product related to the same subject matter generated or kept by any of its in-house attorneys or outside counsel.

DATED this 28th day of June, 2019.

**GOETZ, BALDWIN & GEDDES, P.C.**

ATTORNEYS FOR PLAINTIFF
HIGH COUNTRY PAVING, INC.

*/s/Robert K. Baldwin*
Robert K. Baldwin
Trent M. Gardner
Jeffrey J. Tierney

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(d)(2) of the Local Rules of Procedure, the undersigned

certifies that this brief contains less than 6,500 words (5,307) as calculated by

Microsoft Word, excluding the caption and this Certificate of Compliance.

*/s/Robert K. Baldwin*
Robert K. Baldwin
Trent M. Gardner
Jeffrey J. Tierney