IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| HIGH COUNTRY PAVING, INC., <br><br> Plaintiff, <br><br> vs. <br><br> UNITED FIRE & CASUALTY CO., <br><br> Defendant. | CV 18–163–M–DWM <br><br><br> OPINION <br> and ORDER |

This is a bad faith action arising out of a fatal accident involving a vehicle owned by Plaintiff High Country Paving and insured by Defendant United Fire and Casualty Company.  United Fire ultimately settled with the third-party victims of the accident for policy limits of $3 million without securing a release for High Country.  Then, High Country settled with the third parties for an additional $1.275 million of its own money.  High Country sued United Fire, alleging bad faith related to the settlement (Count 1) and breach of contract for failing to pay comprehensive general liability ("CGL") coverage (Count 2).  (Doc. 21.)

This case has a complex procedural history, including litigation across three different courts.  The case was removed to this Court in September 2018.  (Doc. 1.) On May 9, 2019, this Court certified a question to the Montana Supreme Court regarding United Fire's duty to obtain a release prior to paying policy limits.  (Doc.

1

27.) That question was answered on December 31, 2019. (*See* Doc. 88.) In the meantime, each party sought to compel disclosure of materials identified in the other's privilege log. (Docs. 31, 35.) They also sought summary judgment. (Docs. 39, 48.) On November 4, 2019, this Court granted both motions to compel. (Doc. 77.) High Country sought immediate relief by scurrying to the Ninth Circuit Court of Appeals through a petition for writ of mandamus. (Doc. 83.) Although the case was stayed pending the resolution of that writ, (*see* Doc. 87), the Court ruled on the pending summary judgment motions, determining that genuine factual disputes remained regarding High Country's bad faith claim (Count 1) but ruling in High Country's favor on its contract claim (Count 2), (Doc. 89). On April 2, 2020, the Ninth Circuit Court of Appeals denied High Country's petition for a writ of mandamus. (Doc. 92.) The case is set for trial on October 19, 2020. (Doc. 94.)

High Country seeks to exclude certain testimony and opinions of United Fire's hybrid and retained experts. (Doc. 69.) That motion is granted in part and denied in part. The complete factual background for the case is outlined in the Court's Certification Order. (*See* Doc. 27.)

## LEGAL STANDARDS

### I.     Disclosure Obligations

Parties are required to make their expert disclosures at the time and in the manner ordered by the Court. *Goodman v. Staples The Office Superstore, LLC*,

644 F.3d 817, 827 (9th Cir. 2011). If a party fails to properly disclose this information, it cannot use the non-disclosed information at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The parties here were reminded of this potential sanction in the Scheduling Order, which states: "An inadequate report or disclosure may result in exclusion of the expert's opinions at trial even though the expert has been deposed." (Doc. 22 at ¶ 9(c).)

Rule 26(a)(2) provides for disclosures by two types of expert: those retained or specially employed to give expert testimony in a case and those who are not retained or specially employed, but who nonetheless may provide expert testimony, also known as "hybrid experts." An expert who falls into the first category is required to provide an expert report. Fed. R. Civ. P. 26(a)(2)(B). An expert who falls into the second category, however, need only provide disclosures stating both "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705[] and . . . a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i), (ii).

## II. Rule 702 and *Daubert*

Admissibility of expert opinion is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In its gatekeeping role, the court must determine that the proffered opinions are both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). Expert opinions are relevant if they "logically advance a material aspect of the party's case" and reliable if they are the product of sound methods and principles. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (internal quotation marks omitted). The focus is on the expert's process, not the correctness of the conclusions. *Daubert*, 509 U.S. at 595. Courts have broad discretion in determining how to assess an expert's reliability. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

## ANALYSIS

On June 17, 2019, United Fire disclosed four hybrid witnesses: Guy Rogers, Jon Wilson, Katie (Katherine) Huso, and Nick Pagnotta. (Doc. 70-1.) That disclosure also includes a serial list of "Additional Hybrid Witnesses," including: A. Clifford Edwards, Christopher Edwards, John Edwards, Mary Farjadi, Neal

Scharmer, and "other representatives of United Fire" who may have formed relevant opinions. (*Id.* at 19–20.) On October 1, 2019, United Fire disclosed its retained expert, Gary Zadick. (Doc. 70-2.) According to the disclosures, these individuals are expected to opine in two areas: United Fire's duty to its insured and the value of the third-party claims against High Country. In light of the Montana Supreme Court's answer to the certified question, (Doc. 88), and this Court's ruling on summary judgment, (Doc. 89), the sole question remaining for trial is whether "the reasonable settlement value of this case exceeded $3 million," (*id.* at 3). As a preface to considering High Country's arguments, it is important to note that the methods described are precisely what lawyers, adjusters, and insurance carriers do every day in personal injury cases. Indeed, the very premise of High Country's case is the valuation dispute of different lawyers and adjusters.

I.   **Guy Rogers**

Guy Rogers is a licensed Montana attorney with extensive experience in the area of civil litigation defense. (*See* Doc. 70-1 at 2–3.) United Fire anticipates he will provide opinions in three subject areas, only one of which is still at issue: "Whether the reasonable settlement value of the claims against High Country exceeded policy limits." (*Id.* at 4.) High Country unpersuasively seeks to exclude this opinion on the ground that it is not reliable and lacks a sufficient foundation.

High Country argues that Mr. Rogers' approach to claim valuation does not meet the requirements of *Daubert* because it is "not a scientific or precise exercise." (Doc. 70 at 16.) United Fire, on the other hand, argues that *Daubert* does not apply to non-scientific expert testimony. Neither party is entirely correct. While the rigid factors relevant to a scientific opinion need not be adhered to, courts are required "to make some kind of reliability determination to fulfill [their] gatekeeping function." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004) (internal quotation marks omitted). Here, the factual basis for Mr. Rogers' valuation opinion is stated as:

> Mr. Rogers has also been involved in defending numerous personal injury and wrongful death cases, and has defended and tried cases against the Edwards Law Firm. He is familiar with the types of damages that can be recovered in such actions, as well as the types of damages claimed and experts routinely retained by the Edwards Law Firm and other top-tier plaintiffs' firms in personal injury and wrongful death cases. Mr. Rogers has also been the mediator in numerous personal injury and wrongful death cases. Based on the information provided to him by Mr. Scharmer, and his knowledge and experience, Mr. Rogers was of the opinion that it was reasonably clear that High Country's liability to Mr. Edwards' clients was in excess of $3,000,000.

(Doc. 70-1 at 9.) He further explained in his deposition that a number of factors go into the "hopper" when valuing a wrongful death case, such as existing jury verdicts, venue, and prior experience in the field, (Doc. 66-15 at 4); as well as who the plaintiff is, the injuries that were sustained, and the plaintiff's family situation, (*id.* at 6). While Mr. Rogers conceded that it would not be possible to provide a

6

"precise dollar amount" and "no one has a crystal ball," he consistently explains his process for determining a reasonable settlement range. (*See id.* at 4.) The soundness of Mr. Rogers' methodology is supported by the Montana Supreme Court's discussion in *Gibson v. W. Fire Ins. Co.*, 682 P.2d 725, 735–36 (Mont. 1984),[1] which shows the process lawyers engage in when assessing case values.

High Country further argues that the uncertainties surrounding the value of general damages make it an improper area for expert testimony. This argument highlights the unique procedural posture of the case. Unlike a usual case involving general damages, the jury here will not be determining the actual value of the third-party claims, but the reasonableness of an insurance company's valuation of a case. As a result, the jury will need information about both what United Fire knew (facts) and how it made its decision based on those facts (opinions). *Cf. id.* (permitting expert legal testimony regarding the value of the underlying settlement in an insurance bad faith case to aid the jury in deciding whether the insurance company acted reasonably). Contrary to High Country's characterization, Mr. Rogers' approach is not an "amorphous thought experiment," (Doc. 70 at 16), but a sufficiently reliable practice to be presented to a jury. Moreover, the fact that no

---

[1] High Country tries to raise an *Erie* challenge to United Fire's reliance on this Montana case. (*See* Doc. 85 at 4–6.) While *Gibson* speaks to the unique question of case valuation in the insurance context, it is not cited as binding on this Court's interpretation or application of federal procedural rules.

one can accurately predict jury verdicts only further supports the importance of expert testimony in this field. *See* Fed. R. Evid. 702(a). The expert testimony offered by Mr. Rogers speaks to how an insurer values a particular case in certain circumstances. Simply saying that case valuation is impossible does not help a jury answer that question.

High Country further challenges the foundation of Mr. Rogers' testimony, arguing that his opinions are based on a single, 45-minute phone call with Neal Scharmer. (Doc. 70 at 19.) High Country's brief shows that neither United Fire, nor Mr. Rogers, have attempted to obfuscate the basis of his knowledge or the limits of his factual review. As argued by United Fire, his brief review of the case is ripe for cross-examination; as is High Country's contention that Mr. Rogers did not follow his own methodology. Mr. Rogers is permitted to testify as a hybrid witness consistent with his expert disclosure.

## II.    Jon Wilson

Jon Wilson, like Rogers, is a licensed Montana attorney with extensive experience in insurance coverage and civil defense litigation. (Doc. 70-1 at 10.) He is expected to testify to the same general subject matters as Mr. Rogers. (*Id.* at 11.) According to High Country, Mr. Wilson does not have any firsthand knowledge of the case because he "never spoke to anyone at United Fire and never

offered any advice." (Doc. 70 at 21.) High Country further argues that Mr. Wilson's opinions merely bolster, or vouch for, those offered by Mr. Rogers.

Mr. Wilson's testimony presents a close question. The record in this case indicates that Mr. Wilson was not himself directly involved in United Fire's case valuation, but was rather part of Mr. Rogers' valuation methodology. After he was approached by United Fire, Mr. Rogers consulted with Mr. Wilson. The question then is whether the opinions formed and shared by Mr. Wilson during that consultation can be considered opinions formed "during the course of treatment." *See Goodman*, 644 F.3d at 826 (discussing the boundaries under Rule 26(a)(2)(C) for a treating physician). The answer is a cautioned yes.

Mr. Wilson's disclosure shows that he formed his own contemporaneous opinion about the value of the underlying case based on the information provided by Mr. Rogers. *See Tarter v. Throne Law Office, P.C.*, 2019 WL 609337, at *3 (D. Mont. Feb. 13, 2019) ("[W]hen an expert is to offer testimony limited to his or her percipient knowledge i.e. knowledge and opinions formed at the time an earlier evaluation or report was made, the expert is treated as a non-retained expert[.]"). There is no indication that he offered an opinion or authored a report after the fact. Accordingly, Mr. Wilson is permitted to testify to the opinion he formed at that time and its factual basis. That said, he is prohibited from framing his testimony in

terms that merely bolster the opinions of Mr. Rogers. *See Huawei Techs., Co., Ltd. v. Samsung Elecs. Co., Ltd.*, 340 F. Supp. 3d 934, 993–94 (N.D. Cal. 2018).

### III. Katie Huso

Katie Huso is a licensed Montana attorney with experience in personal injury and coverage claims. (Doc. 70-1 at 13.) She was United Fire's coverage counsel. (*Id.*) She is expected to testify to the same subject areas as Mr. Rogers and Mr. Wilson, as well as to the extent of coverage available under High Country's policy. (*Id.* at 14.) Given the narrow issues remaining in the case, only her valuation opinion is relevant. High Country argues that it is improper "bolstering" and deficient under Rule 702 and *Daubert* because Ms. Huso simply changed her tune regarding settlement after speaking to Mr. Rogers.

Ms. Huso stated in her deposition that she believed the underlying claims were worth at least $3 million but was reluctant to assign a specific dollar value. (Doc. 66-13 at 74–75.)[2] High Country is correct, however, that neither her disclosure nor her deposition provides a basis for her valuation of the claim. Nor does it appear that she provided a contemporaneous valuation. Nevertheless, Ms. Huso provides necessary factual background for how United Fire processes claims

---

[2] High Country's characterization of Ms. Huso's testimony is not quite accurate. (*See* Doc. 70 at 26.)

such as the one at issue here. Her fact testimony regarding her actions in this case, as well as who she spoke to and why, is permitted.

## IV. Additional Hybrid Experts

Finally, United Fire's hybrid disclosure generally states:

> **Additional Hybrid Witnesses**
> There are numerous fact witnesses who may provide opinion testimony in this case, including A. Clifford Edwards, Christopher Edwards, John Edwards, Mary Farjadi, Neal Scharmer, and other representatives of United Fire who formed opinions as to High Country's liability, the reasonable settlement value of the [the third-party claims], and United Fire's duties under Montana law. United Fire believes that the opinions that will be expressed by these witnesses are contained in the documents that have or will be produced in this case in discovery.

(Doc. 70-1 at 19–20.) These witnesses include the plaintiffs' attorneys in the underlying matter and United Fire employees. High Country seeks to exclude any such testimony on the grounds that this is not an actual disclosure. High Country is correct. Even assuming the short summary identifies the subject matter of the purported testimony, it does not include "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(ii). It is not sufficient to merely reference other, unidentified discovery documents. *Ibey v. Trinity Universal Ins. Co.*, 2013 WL 4433796, at *3 (D. Mont. Aug. 16, 2013). And, because United Fire unpersuasively maintains that its disclosure is adequate given the other discovery in this case, there is no basis to conclude the inadequate disclosure is harmless. *See Yeti by Molly, Ltd.*, 259 F.3d at 1106 (placing the

11

burden of proving harmlessness on the party facing sanctions). Nonetheless, these witnesses are permitted to testify as fact witnesses to matters limited to what they did and why they did it.

## V. Gary Zadick

High Country also challenges a retained expert, attorney Gary Zadick. (Doc. 70-2.) Similar to the hybrid witnesses above, Zadick is an experienced insurance civil litigation attorney. (*Id.* at 3–6.) His opinions relate to an insurer's duties to its insured, as well as the potential settlement value of third-party claims. (*Id.* at 8–23.) "The purpose of the detailed and specific disclosure requirements of Rule 26(a)(2)(B) is to provide full information so the parties can prepare for effective and efficient discovery[.]" *Wilderness Dev., LLC v. Hash*, 2009 WL 564224, *5 (D. Mont. Mar. 5, 2009). Thus, an expert report should include both the "substance" of the expert's testimony and the reasons for it. *Id.* "The report should offer the 'how and why' of the results, not mere conclusions." *Id.* (internal quotation marks omitted). "Bald conclusions of an expert witness, or brief statements of ultimate conclusions with no explanation of the basis and reasons therefore, or the absence of a statement of how the facts support the conclusions, do not satisfy the Rule 26(a)(2)(B) requirements." *Id.* High Country argues that Mr. Zadick's report lacks the "how" and the "why." (Doc. 70 at 29.)

The format and content of Mr. Zadick's disclosure is unique. After a brief factual section (that includes some opinion statements), his opinions are outlined in the "answers" to a series of "questions." Of the roughly 22 opinions proffered in this manner, only opinions 6 and 7 are relevant to the valuation issue. (Doc. 70-2 at 19–21.) While High County is correct that these opinions are somewhat conclusory, Mr. Zadick adequately presents his valuation process earlier in his report. (*Id.* at 12.) High Country's challenges to Mr. Zadick's analytical framework are better addressed on cross-examination.

Nor is High Country's improper supplementation argument compelling. United Fire disclosed a rebuttal report for Mr. Zadick on October 30, 2019. (Doc. 85-1.) Rebuttal reports are limited to evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party" in an expert report. Fed. R. Civ. P. 26(a)(2)(D)(ii). Here, Mr. Zadick explains that insurers must evaluate claims based on their investigation and the information provided by the injured party's counsel. (Doc. 85-1 at 8–12.) He addresses the relevant considerations and explains why some facts are speculative and others are determinative. (*See id.* at 11.) But Mr. Zadick also specifically states his disagreement with High Country's experts regarding the ability to predict damage amounts and what types of considerations play a role in lowering or increasing total calculations. (*See id.* at 9–11.) His opinions are appropriately "rebuttal."

13

## CONCLUSION

IT IS ORDERED that High County's motion (Doc. 69) is GRANTED insofar as Ms. Huso and the "Additional Hybrid Witnesses" are limited to providing fact testimony at trial. The motion is DENIED in all other respects.

DATED this __17th__ day of April, 2020.

_____ 16:21 PM
Donald W. Molloy, District Judge
United States District Court